**Hearing Date: April 18, 2023, at 10:00 a.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Initial Debtors and Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| FRED M. SHANKS, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding No. 22-01190 (MG) |
| v. | ) | |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

### NOTICE OF HEARING ON DEBTORS' MOTION TO DISMISS
### THE AMENDED COMPLAINT

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion to Dismiss the Amended Complaint and Incorporated Memorandum of Law* (the "Motion") will be held on **April 18, 2023, at 10:00 a.m., prevailing Eastern Time** (the "Hearing") before the Honorable Martin Glenn, Chief United States Bankruptcy Judge.  In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remoted using Zoom for Government.  Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.  Electronic appearances (eCourtAppearances) need to be made by 4:00 p.m., prevailing Eastern Time, the business day before the hearing (*i.e.*, on **April 17, 2023**).

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m., prevailing Eastern Time on April 18, 2023, must connect to the Hearing beginning at 9:00 a.m., prevailing Eastern Time on April 18, 2023.  When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing.  Parties that type in only their first name, a nickname, or initials will not be admitted into the Hearing.  When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room" in the order in which you seek to connect.  Court personnel will admit each person to the Hearing from the Waiting Room after confirming the person's name (and telephone number, if a telephone is used to connect) with their eCourtAppearance.  Because of the large number of expected participants, you may experience a

delay in the Waiting Room before you are admitted to the Hearing.

**PLEASE TAKE FURTHER NOTICE** that any responses to the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; and (c) be filed electronically with the Court on the docket of *Shanks v. Celsius Network LLC, et al.*, No. 22-01190 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov/).

**PLEASE TAKE FURTHER NOTICE** that pursuant to the *Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 1181] (the "Case Management Order"), unless otherwise ordered by the Court, the parties to this adversary proceeding shall confer and agree upon a briefing schedule for this Motion, including a response deadline (the "Response Deadline") and reply deadline (the "Reply Deadline"), which shall be submitted to the Court for approval and shall comply with the Case Management Order.

**PLEASE TAKE FURTHER NOTICE** that only those responses that are timely filed, served, and received will be considered at the Hearing. Failure to file a timely response may result in entry of a final order granting the Motion as requested by the Debtors.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius. You may also obtain copies of the Motion and other

pleadings    filed    in    these    chapter    11    cases    by    visiting    the    Court's    website    at http://www.nysb.uscourts.gov/ in accordance with the procedures and fees set forth therein.

*[Remainder of this page intentionally left blank]*

New York, New York
Dated: February 22, 2023

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        jsussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        patrick.nash@kirkland.com
              ross.kwasteniet@kirkland.com

- and -

Judson Brown, P.C. (admitted *pro hac vice*)
T.J. McCarrick (admitted *pro hac vice*)
Leah Hamlin (admitted *pro hac vice*)
1301 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone:    (202) 389-5000
Facsimile:    (202) 389-5200
Email:        judson.brown@kirkland.com
              tj.mccarrick@kirkland.com
              leah.hamlin@kirkland.com

*Counsel to the Debtors and*
*Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and*
*Debtors in Possession*

**Hearing Date: April 18, 2023, at 10:00 a.m. (prevailing Eastern Time)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| FRED M. SHANKS, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding No. 22-01190 (MG) |
| | ) | |
| v. | ) | |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEBTORS' MOTION TO DISMISS THE AMENDED**
**COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 2

   I.   Celsius Operations Prior to Bankruptcy ............................................................ 2

   II.  The Ownership of Earn Assets and Sale of Stablecoin Motion and Order ........................ 3

   III. Plaintiff's Adversary Complaint ...................................................................... 6

LEGAL STANDARD ........................................................................................................ 11

ARGUMENT .................................................................................................................... 13

   I.   The Law of the Case Bars Plaintiff from Litigating His Breach-of-Contract Claim in
      this Adversary Proceeding ............................................................................. 13

   II.  The Debtors Did Not Breach the Terms of Use When They Prevented Plaintiff
      from Utilizing the Swap Feature .................................................................... 16

   III. Even if the Amended Complaint Establishes a Prima Facie Case for Breach of
      the Terms of Use, Plaintiff Has Failed to Plead Facts Upon Which Relief Can Be
      Granted .................................................................................................... 21

      A.  The Amended Complaint Fails to Establish Entitlement to Compensatory
         Damages ............................................................................................. 21

      B.  The Amended Complaint Fails to Establish Rescission of the Contract ...................... 24

CONCLUSION ................................................................................................................. 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 477 W. 142nd St. Hous., Dev. Fund Corp.*,
   No. 15-12178, 2020 WL 3067733 (Bankr. S.D.N.Y. June 8, 2020) ................................12, 15

*Am. Railcar Indus., Inc. v. GyanSys, Inc.*,
   No. 14-cv-8533, 2017 WL 11501888 (S.D.N.Y. 2017) ..........................................................22

*Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Secs. Corp.*,
   351 F. Supp. 2d 79 (S.D.N.Y. 2004)......................................................................................12

*In re AMR Corp.*,
   567 B.R. 247 (Bankr. S.D.N.Y. 2017) ......................................................................12, 14, 15

*Apex Pool Equip. Corp. v. Lee*,
   419 F.2d 556 (2d Cir. 1969).....................................................................................................25

*Aramony v. United Way of Am.*,
   254 F.3d 403 (2d Cir. 2001).....................................................................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................................11

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................................11

*Cisco Sys., Inc. v. Synamedia Ltd.*,
   557 F. Supp. 3d 464 (S.D.N.Y. 2021)......................................................................................17

*Coastal Power Int'l, Ltd. v. Transcontinental Cap. Corp.*,
   10 F. Supp. 2d 345 (S.D.N.Y. 1998)........................................................................................21

*Continental Ins. Co. v. Atlantic Cas. Ins. Co.*,
   603 F.3d 169 (2d Cir. 2010).....................................................................................................17

*DeLuca v. AccessIT Grp., Inc.*,
   695 F. Supp. 2d 54 (S.D.N.Y. 2010)........................................................................................12

*EIG Cred. Mgmt. Co. v. CNX Res. Corp.*,
   No. 20-cv-2887, 2021 WL 1226415 (S.D.N.Y. Mar. 31, 2021)...............................................21

*ESPN, Inc. v. Office of Com'r of Baseball*,
   76 F. Supp. 2d 383 (S.D.N.Y. 1999)........................................................................................24

*Fid. Nat'l Title Ins. Co. v. Assured Title Agency, Corp.*,
No. 507343/2020, 2021 WL 143474 (N.Y. Sup. Ct. Jan. 15, 2021)......................................20

*Geldzahler v. N.Y. Med. Coll.*,
663 F. Supp. 2d 379 (S.D.N.Y. 2009)....................................................................................12

*Glob. Network Commc'ns, Inc. v. City of New York*,
458 F.3d 150 (2d Cir. 2006)...................................................................................................13

*Goel v. Bunge, Ltd.*,
820 F.3d 554 (2d Cir. 2016)...................................................................................................12

*Graham v. James*,
144 F.3d 229 (2d Cir. 1998)...................................................................................................25

*Greenfield v. Philles Records*,
98 N.Y.2d 562 (2002)............................................................................................................17

*Hartford Underwriters Ins. Co. v. Hanover Ins. Co.*,
122 F. Supp. 3d 143 (S.D.N.Y. 2015)....................................................................................17

*Hudson Neurosurgery, PLLC v. UMR, Inc.*,
No. 20-CV-9642, 2022 WL 902107 (S.D.N.Y. Mar. 28, 2022) .............................................18

*In re Hypnotic Taxi LLC*,
543 B.R. 365 (Bankr. E.D.N.Y. 2016)....................................................................................14

*Joyner v. Greiner*,
195 F. Supp. 2d 500 (S.D.N.Y. 2002)....................................................................................12

*Kelly-Brown v. Winfrey*,
717 F.3d 295 (2d Cir. 2013)...................................................................................................22

*In re Klaas*,
548 B.R. 414 (Bankr. W.D. Pa. 2016) ...................................................................................14

*Meadows v. United Servs., Inc.*,
963 F.3d 240 (2d Cir. 2020)...................................................................................................12

*Mohegan Lake Motors, Inc. v. Maoli*,
559 F. Supp. 3d 323 (S.D.N.Y. 2021)....................................................................................21

*Morgan Art Found. Ltd. v. McKenzie*,
No. 18 Civ. 4438, 2019 WL 2725625 (S.D.N.Y. July 1, 2019) .............................................25

*In re Motors Liquidation Co.*,
585 B.R. 708 (Bankr. S.D.N.Y. 2018) ....................................................................................14

iv

*Nassau Operating Co. v. DeSimone*,
   206 A.D.3d 920 (N.Y. App. Div. 2022) ................................................................17

*Negrete v. Citibank, N.A.*,
   187 F. Supp. 3d 454 (S.D.N.Y. 2016)...................................................................18

*In re PCH Assocs.*,
   949 F.2d 585 (2d Cir. 1991)...................................................................................14

*Pescatore v. Pan Am. World Airways, Inc.*,
   97 F.3d 1 (2d Cir. 1996).........................................................................................14

*Schonfeld v. Hilliard*,
   218 F.3d 164 (2d Cir. 2000)............................................................................21, 23

*Septembertide Publ'g, B.V. v. Stein & Day, Inc.*,
   884 F.2d 675 (2d Cir. 1989)...................................................................................24

*Shane Campbell Gallery, Inc. v. Frieze Events, Inc.*,
   441 F. Supp. 3d 1 (S.D.N.Y. 2020) .......................................................................24

*Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*,
   842 F. Supp. 2d 502 (S.D.N.Y. 2012)....................................................................18

*Spinelli v. Nat'l Football League*,
   96 F. Supp. 3d 81 (S.D.N.Y. 2015) ................................................................18, 21

*Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*,
   993 F. Supp. 2d 379 (S.D.N.Y. 2014)....................................................................21

*Surrey Propco LLC v. Denihan Ownership Co.*,
   No. 21-cv-8616, 2022 WL 2718205 (S.D.N.Y. July 13, 2022)..............................17

*Suthers v. Amgen, Inc.*,
   441 F. Supp. 2d 478 (S.D.N.Y. 2006)....................................................................20

*Todd v. Russell*,
   1 F. Supp. 788 (S.D.N.Y. 1932).............................................................................14

*Tonking v. Port Auth. of N.Y. & N.J.*,
   3 N.Y.3d 486 (2004) ..............................................................................................18

*United States v. Carr*,
   557 F.3d 93 (2d Cir. 2009).....................................................................................14

*USI Ins. Servs. LLC v. Miner*,
   801 F. Supp. 2d 175 (S.D.N.Y. 2011)....................................................................18

*Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics, Inc.*,
   819 F. Supp. 2d 230 (S.D.N.Y. 2011)...............................................................................21, 23

*Waitkus v. Metro. Hous. Partners*,
   No. 114196/02, 2006 WL 6306863 (N.Y. Sup. Ct. Dec. 18, 2006) .......................................24

*Warren v. John Wiley & Sons, Inc.*,
   952 F. Supp. 2d 610 (S.D.N.Y. 2013)...................................................................................16

*Wedgewood Care Cntr., Inc. v. Kravitz*,
   198 A.D.3d 124 (N.Y. App. Div. 2021) ...............................................................................17

*Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*,
   946 F.2d 1003 (2d Cir. 1991)...........................................................................................21, 23

**Rules**

Fed. R. of Civ. P. 12(b)(6) ...........................................................................................11

Pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this Adversary Proceeding through Federal Rule of Bankruptcy Procedure 7012, Debtor Celsius Network LLC and its debtor affiliates (together, the "Debtors," "Celsius," or "Defendants"), as debtors and debtors in possession in the above-captioned chapter 11 cases, respectfully submit this Motion to Dismiss Plaintiff's Amended Complaint (the "Motion") and seek entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**.  In support of the Motion, the Debtors state as follows:

## **INTRODUCTION**

1.      On January 4, 2023, this Court issued its most important and impactful decision in these chapter 11 cases to date, holding that under the Terms of Use governing the relationship between the Debtors and customers, assets deposited into an Earn Account became property of the Debtors' estates.  That decision was rendered after exhaustive briefing by the Debtors, the Official Committee for Unsecured Creditors ("UCC"), the United States Trustee, state regulators, and multiple represented and *pro se* creditors, and a full evidentiary hearing.  In issuing that ruling, this Court established a go-forward plan for the orderly and equitable resolution of creditor claims under the Earn Program.  Under that plan, the Court expressly reserved creditors' contract-defense and breach-of-contract claims and determined that such claims would be fully and fairly litigated during the claims-resolution process.  This is the only way to ensure that the over 600,000 users in the Earn Program are treated equitably and made as whole as possible.

2.      Plaintiff's adversary case would turn that process upside down and allow individual creditors to jump the line and recover in full on their claims, to the detriment of other similarly situated creditors.  Such an attempt at individual recovery not only is inequitable, it is precluded by this Court's January 4 decision.  As a matter of fairness to all creditors, judicial economy, and

respect for this Court's prior rulings, Plaintiff's complaint should be dismissed in full. This Court has already denied three motions seeking to establish ownership of Earn Assets on the basis that the Earn Order precluded the relief sought. It should do the same here.

3.      Moreover, though this Court need not reach the merits of Plaintiff's claims, those claims are deficient as a matter of law. Plaintiff wholly fails to allege any conduct by the Debtors establishing a breach of the Terms of Use—the governing contract between the parties—and fails to establish any entitlement to the extraordinary relief requested. Even if Plaintiff's case was procedurally proper, therefore, his singular cause of action for breach of contract still must be dismissed for failure to state a claim upon which relief can be granted.

## STATEMENT OF CONSENT

4.      The Debtors confirm their consent to the Court entering final orders or judgments in connection with this adversary proceeding.

## FACTUAL BACKGROUND

### I.      Celsius Operations Prior to Bankruptcy

5.      Celsius is a crypto-based financial platform that provides financial services to institutional, corporate, and retail customers across more than 100 countries. Celsius was created in 2017 and was one of the first cryptocurrency platforms that allowed customers to transfer their cryptocurrency assets and (a) earn rewards on those assets through an "Earn Account" and/or (b) take out loans using those assets as collateral through a "Borrow Account."[1]

6.      On June 12, 2022, in an effort to stabilize its business and protect its users, Celsius

---

[1]     A full description of Celsius' business operations and the facts and circumstances leading to these chapter 11 cases is set forth in the *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* [Case No. 22-10964, Docket No. 23] (the "Mashinsky

decided to pause all withdrawals, swaps, and transfers on its platform (the "Pause").  Because of the Pause, customers were, among other things, prevented from withdrawing assets from their Celsius accounts or swapping coins on the platform.

7.        On July 13, 2022, (the "Petition Date"), each Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  On July 19, 2022, the Court authorized the joint administration and procedural consolidation of the Chapter 11 cases.  *See Order Directing (I) Joint Administration of the Chapter 11 Cases and (II) Granting Related Relief* [Case No. 22-10964, Docket No. 53].

## II.        The Ownership of Earn Assets and Sale of Stablecoin Motion and Order

8.        As recognized by the Debtors and the Court from the earliest days of the bankruptcy, a critical threshold issue to resolve in these cases was ownership of the assets transferred by customers into the Debtors' Earn Accounts.

9.        In a series of motions, the Debtors teed up that precise issue.  *See Debtors' Motion Seeking Entry of an Order (I) Permitting the Sale of Stablecoin in the Ordinary Course and (II) Granting Related Relief* [Case No. 22-10964, Docket No. 832]; *Debtors' Amended Motion for Entry of an Order (I) Establishing Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course and (III) Granting Related Relief* [Case No. 22-10964, Docket No. 1325] (the "Earn Motion").  Specifically, the Earn Motion asked the Court to answer "the largest question relating to property of the estate: who holds title to the assets transferred into the Debtors' earn program and any proceeds thereof."  Earn Motion, ¶ 1.

---

First Day Declaration").

Importantly, the Earn Motion "d[id] not seek findings with respect to (x) the ownership of assets in the Debtors' Custody Program, Withhold Accounts, or Borrow Program or (y) whether any Account Holder has valid defenses to the purported contract between Account Holders and the Debtors under the Terms of Use, and all parties' rights [were] reserved with respect to each of the foregoing." *Id.* at ¶ 16.

10.    On December 5, 2022, following extensive briefing, the Court held an evidentiary hearing on the Earn Motion wherein the Debtors' counsel, counsel to the UCC, the United States Trustee, state regulators, and numerous represented and *pro se* creditors had an opportunity to present evidence and argument.

11.    On January 4, 2023, the Court issued its *Memorandum Opinion and Order Regarding Ownership of Earn Account Assets* [Docket No. 1822] (the "Earn Order").  The Court concluded, "based on Celsius's unambiguous Terms of Use, and subject to any reserved defenses, that when the cryptocurrency assets … were deposited in Earn Accounts, the cryptocurrency assets became Celsius's property; and the cryptocurrency assets remaining in the Earn Accounts on the Petition Date became property of the Debtors' bankruptcy estates."  Earn Order at 4.

12.    In so holding, the Court also emphasized: "A fundamental principle of the Bankruptcy Code is equality of distribution.  There simply will not be enough value available to repay all Account Holders in full.  If only some Account Holders prevail with their arguments that they own the cryptocurrency assets in their accounts, they hope to recover 100% of their claims, while most of the Account Holders are left as unsecured creditors and may recover only a small percentage of their claims." *Id.* at 6.

13.    At multiple points in the Earn Order, the Court explicitly noted that its findings "d[id] not mean holders of Earn Assets will get nothing from the Debtors." *Id.* at 30.  Rather,

"[t]he amount of allowed unsecured claims is subject to later determination in this case (*through the claims allowance process*) and may potentially include damages asserted by Account Holders, including breach of contract, fraud or other theories of liability." *Id.* (emphasis added); *see also id.* at 43 (noting that "creditors' rights with respect to [breach-of-contract, fraudulent inducement, and other] claims are *explicitly reserved for the claims resolution process*," but "do not bear on the question of title and ownership presented in the [Earn Motion]" (emphasis added)); *id.* at 45 ("[C]reditor's rights with respect to various defense to and breach of contract claims are reserved. Creditors will have every opportunity to have a full hearing on the merits of these arguments *during the claims resolution process*." (emphasis added)).

14.     This Court has already denied three *pro se* motions pursuant to the Earn Order.  On January 6, 2023, the Court denied Kwok Mei Po's motion seeking a ruling that she held full title and ownership to funds in her Earn Accounts.  *See Order Denying Kwok Mei Po's Motion Seeking a Ruling of Full Ownership of Funds* [Case No. 22-10964, Docket No. 1833] (the "Po Denial"). The Court held that Po's "colorable claim[s]" to breach of contract "would not affect the ownership of cryptocurrency deposited in Po's Earn Accounts," and that Po should "assert [her breach-of-contract] claims in the claims-allowance process." *Id.* at 3–4.

15.     On January 25, 2023, this Court once again invoked the Earn Order to deny Kulpreet Khanuja's motion for a ruling that his Earn assets are not part of the Debtors' bankruptcy estates.  *See Order Denying Kulpreet Khanuja's Motion Seeking a Ruling that Personal Earn Assets Are Not Property of the Debtors' Estates* [Case No. 22-10964, Docket No. 1934] (the "Khanuja Denial").  Similar to the Kwok Denial, the Court ruled that "any claim that Celsius breached its contract with Khanuja would not affect the ownership of cryptocurrency in Khanuja's account," and further held that with respect to any potential breach-of-contract claim, Khanuja

5

could "file a proof of claim and assert such claims in the claims-allowance process." *Id.* at 4.

16.     Also on January 25, 2023, the Court denied Rebecca Gallagher's motion for a ruling that her Earn assets are not part of the Debtors' estates on similar grounds. *See Order Denying Rebecca Gallagher's Motion Seeking a Ruling that All the Coins Deposited in Celsius Earn Are Her Property* [Case No. 10964, Docket No. 1933] (the "Gallagher Denial").  In that ruling, the Court again noted that pursuant to the Earn Order, any contract defenses or breach-of-contract claims "are reserved for the claims resolution process." *Id.* at 2.

## III.     **Plaintiff's Adversary Complaint**

17.     On December 20, 2022, Plaintiff Fred M. Shanks ("Mr. Shanks" or "Plaintiff") filed his *Complaint for Declaratory Judgment* [Adv. Pro. No. 22-01190, Docket No. 1] (the "Complaint").  On January 7, 2023, Plaintiff filed an *Amended Complaint Against All Defendants* [Adv. Pro. No. 22-01190, Docket No. 8] (the "Amended Complaint").

18.     According to Plaintiff's exhibits, Plaintiff created his Celsius account on November 23, 2020.  *See* Amended Complaint, Ex. 3 at 10.  At the time he joined, Plaintiff accepted Version 5 of the General Terms of Use (the "Terms of Use Version 5").[2]  Plaintiff's purported transaction history shows his continued use of the Celsius platform following the implementation of Version 8 of the Terms of Use ("Terms of Use Version 8") on April 15, 2022, establishing that he accepted those Terms as well.  *See* Earn Order at 5.  Plaintiff does not deny his acceptance of the Terms of Use or their legal effect.  *See* Amended Complaint at 5 ("The Defendants and Mr. Shanks **did** enter into a contract …." (emphasis in original)).  During all periods relevant to the Amended Complaint,

---

[2]     Each historical iteration of the Terms of Use is provided in the *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, Providing Terms of Use Dating Back to February 18, 2018* [Case No. 22-10964, Docket No. 393].

the relationship between Plaintiff and the Debtors was governed by Terms of Use Version 8.

19.    The Amended Complaint advances a singular breach-of-contract claim against the Debtors, alleging that the Debtors breached the Terms of Use when, after the Pause, they prevented Plaintiff from utilizing the Swap feature to obtain USDC to pay off his outstanding loan with Celsius.    Plaintiff alleges that this conduct constituted a breach of contract and effectively terminated the parties' contractual relationship under Terms of Use, including those terms establishing Celsius's ownership of the cryptocurrency in Plaintiff's Earn Account.  *Id.* at 6.

20.    Plaintiff's factual allegations are primarily advanced through his attached exhibits, which show Plaintiff's email communications with the Debtors from June 14, 2022, through June 16, 2022, regarding a margin call on his outstanding loan, as well as what appears to be an account transaction history for his Celsius Account[3] and a public notice from Celsius regarding the Pause. *See id.*, Exs. 1–4.    In those communications, Plaintiff initially asked to transfer Bitcoin ("BTC") assets from his Earn Account to a Custody wallet to meet a margin call on his outstanding loan. *See id.*, Ex. 2 at 8.    After Celsius employees affirmed his ability to do so and requested that he confirm this transfer, however, Plaintiff refused to grant that authorization and instead asked to pay off his loan balance in full by swapping CEL token and BTC from his Earn Account for USDC.[4]  *Id.*, Ex. 2 at 4–5.  Plaintiff insisted on executing this Swap multiple times, despite being advised by Celsius employees that the Swap service was unavailable.  *Id.*, Ex. 2 at 2, 4.  Celsius employees advised Plaintiff that in order to avoid liquidation, he could transfer BTC to meet the margin call or could close the loan by transferring into his account necessary stablecoins or

---

[3]    Plaintiff provides no context or explanation for the data presented in Exhibit 3.  On information and belief, however, this data represents the transaction history for Plaintiff's Celsius account.

[4]    In accordance with AML and compliance guidelines, Celsius accepted payment of the loan principal only in certain approved stablecoins.  *See id.*, Ex. 2 at 3.

initiating a U.S. dollars ("USD") wire.  *See id.*, Ex. 2 at 5.  Plaintiff refused both options and

instead insisted that he "close the loan with the funds [he] ha[d] available in [his Earn] account"

through an unavailable Swap transaction, stating this was the only course of action he would take.

*Id.*, Ex. 2 at 1.  Because of Plaintiff's failure to transfer funds necessary to pay off his loan or meet

the margin call, Celsius liquidated just over 0.5 BTC to satisfy Plaintiff's loan principal and interest

obligation of $10,447.48, as well as $313.42 in operation costs.  *See id.*, Ex. 3 at 1.

21.     The Amended Complaint alleges that the Debtor "refus[ed] to allow [Plaintiff] to

… Transfer funds to meet the loan requirement [margin call]."  *Id.* at 5–6.  But as Plaintiff's own

exhibits indisputably show, Celsius employees repeatedly conveyed to Plaintiff that he was

authorized to transfer assets from his Earn Account to the Custody service to meet the margin call

on his loan, and expressly asked for Plaintiff's authorization to take such action.  *See, e.g.*, *id.*, Ex.

2 at 7 ("Please note that your request for internal transfer has been escalated to our dedicated team,

and we will notify you as soon as the action is completed."); *id.*, Ex. 2 at 8 ("We can initiate a

transfer of assets from the Earn service to your Custody Wallet in order to respond to your Margin

Call. … If you wish to proceed, please confirm by indicating below that you 'Confirm' ….").

22.     Construed liberally, Plaintiff's Amended Complaint asserts a single breach-of-

contract claim based upon the Debtors' alleged refusal to allow Plaintiff to swap assets in his Earn

Account for USDC in order to pay off his outstanding loan obligations.  In support of these

allegations, the Amended Complaint, acknowledging that a valid contract exists between the

parties, *id.* at 5, selectively quotes portions of Sections 4 and 11 of the Terms of Use Version 8

regarding the Swap functionality and customers' ability to exercise a call option on their Earn

Account assets.  *Id.* at 4, 6.[5]

23.    The Amended Complaint omits relevant portions of Sections 4 and 11 of the Terms

of Use and fails to mention multiple other provisions of the Terms of Use that permit Celsius to

pause customer account activity, including through the suspension or freezing of accounts and

services, such as the Swap functionality.

24.    For instance, Plaintiff fails to cite Section 4.A, titled "Celsius Account," which

states in relevant part:

> **Celsius may restrict services in certain jurisdictions due to applicable laws,
> regulations, and business considerations, *at its sole discretion*.**  Any Services
> available to you will be those accessible via your Celsius Account.  If you reside in
> the United States, the Services available to you may depend on your status as an
> Accredited Investor.  Celsius may request from you proof of Accredited Investor
> status periodically or at any time, in Celsius' sole discretion.  The failure of a User
> to timely respond to such a request may result in the temporary or permanent loss
> of that User's ability to use a Service.  Celsius is not liable to any loss or damage
> resulting from such temporary or permanent loss of use to any Service.

Terms of Use Version 8 § 4.A (emphasis added).

25.    Elsewhere, Section 4.A also provides:

> **Celsius may freeze, suspend or terminate your Celsius Account at any time *in
> its sole discretion***, in addition to taking any action and seeking any remedy it may
> be entitled to in law or in equity, including if Celsius suspects your involvement in
> any fraudulent activity of any kind or other misuse of the Services, provision by
> you of inaccurate or misleading information, or your involvement in any money
> laundering or other financial crime related to you or your Celsius Account.

---

[5]    Plaintiff also ascribes the following quote, provided without citation, to the Terms of Use: "You may terminate
any loan to Celsius at any time, and request that Celsius return the borrowed Eligible Digital Assets after personal
loans are paid off and deliver any Rewards accrued from the Earn Service, by transferring such Eligible Digital
Assets and Rewards to your external Virtual Wallet (in accordance with Section 11 'Withdrawals') or to the
Custody Service, if available." *Id.* at 4.

The Debtors believe that Plaintiff is erroneously citing a portion of Section 4.D of the Terms of Use Version 8,
regarding Earn services.  Plaintiff's quote erroneously includes the words "after personal loans are paid off" and
omits the word "below" from the parenthetical.  *See* Terms of Use Version 8, § 4.D ("You may terminate any
loan to Celsius at any time, and request that Celsius return the borrowed Eligible Digital Assets and deliver any
Rewards accrued from the Earn Service, by transferring such Eligible Digital Assets and Rewards to your external
Virtual Wallet (in accordance with Section 11 **below**, 'Withdrawals') or to the Custody Service, if available."
(emphasis added)).

*Id.* (emphasis added).

26.     Section 11, titled "Withdrawals," likewise acknowledges Celsius's ability to freeze

or suspend services.  Section 11 reads in relevant part:

> Celsius and our third-party partners may experience cyber-attacks, **extreme market conditions**, or other operational or technical difficulties **which could result in the immediate halt of transactions either temporarily or permanently.** Provided that Celsius has taken reasonable commercial and operational measures to prevent such events in technical systems controlled by Celsius, Celsius is not and will not be responsible or liable for any loss or damage of any sort incurred by you as a result of such cyber-attacks, operational or technical difficulties or suspensions of transactions.  Withdrawal limits based on amounts and/or frequency may apply from time to time, based on legal, regulatory, AML and/or security considerations. Our policies and procedures may require additional security and/or compliance checks that require additional time to complete.  Any individual request to exceed withdrawal limits set by Celsius must be sent via email to app@celsius.network.

*Id.* at § 11 (emphasis added).

27.     Section 19, titled "Closing a Celsius Account," further articulates Celsius's

unequivocal right to pause account activity:

> **[Celsius] ha[s] the right to suspend, freeze or close your Celsius Account at any time** *for any reason* **without advance notice, including by blocking your access to the Celsius Account or the Services.**  If your Celsius Account has a balance when we close it, we will repay and return the remaining Digital Assets to you, including accrued Rewards earned (if applicable) until the close date, less any applicable Obligations, withholding tax and other applicable deductions, unless prohibited by applicable law.  In the event of irregular activity, we may hold assets until we close your Celsius Account.  Any Digital Assets that Celsius returns to you will be sent to the designated withdrawal addresses in your user profile on the Celsius platform for each respective Digital Asset you hold.  Celsius Accounts are not transferable or assignable in whole or in part.  Celsius may be required by law to turn over any Digital Assets related to abandoned or unclaimed Celsius Accounts to the state of your last known residence ("**Escheatment**").  Escheatment periods vary by jurisdiction, and you are responsible to determine the applicability of such laws in your place of residence.  Celsius reserves the right to recover any administrative charges, payments, or fees which it may incur in connection with such unclaimed or abandoned Celsius Accounts, as permitted by applicable law.

*Id.* at § 19.A (emphasis added).

28.     In its requests for relief, the Amended Complaint seeks: (1) declaratory judgment that Plaintiff's assets are not part of the bankruptcy estate; (2) compensation "for the assets with either USD (for whatever the value of the assets is right before ethe check is written) + a 5% premium due to the high volatility of crypto and the various fees associated with repurchasing his assets or return the offset of coins based on the days [*sic*] value that Mr. Shanks request [*sic*] the 3% fee that Celsius charged be returned"; (3) an order authorizing Plaintiff to "close his account" and instructing the Debtors to "immediately unfreeze[] the account to allow for transfer of all remaining coins to [Plaintiff's] external wallet"; and (4) payment of litigation fees associated with the adversary proceeding.  Amended Complaint at 7.

29.     On January 13, 2023, the parties filed the *Joint Stipulation and Agreed Order by and Among the Debtors and Fred M. Shanks Regarding Debtors' Time to Respond to Mr. Shanks' Complaint* [Adv. Pro. No. 22-01190, Docket No. 9] (the "Joint Stipulation"), which extended the Debtors' time to respond to the Amended Complaint to 30 days following the entry of an order regarding the Joint Stipulation.  On January 23, 2023, the Court signed the Joint Stipulation, setting the Debtors' deadline to respond at February 22, 2023.

## **LEGAL STANDARD**

30.     Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012, states that a cause of action must be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The "plausibility standard" requires "more than a sheer possibility that a defendant has

acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

31.    Although a *pro se* litigant's complaint "must be construed liberally" in the face of a 12(b)(6) motion to dismiss, such complaint must still "state a plausible claim for relief." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (per curiam). "[D]ismissal [of a *pro se* complaint] under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief...." *Joyner v. Greiner*, 195 F. Supp. 2d 500, 503 (S.D.N.Y. 2002) (internal quotation marks omitted). Thus, "the duty to liberally construe a [*pro se*] plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).

32.    On a Rule 12(b)(6) motion to dismiss, courts may consider "facts stated on the face of the complaint, … documents appended to the complaint or incorporated in the complaint by reference, and … matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (internal quotation marks omitted). "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks omitted).

33.    Courts also may "take judicial notice of matters of public record, including filings in related lawsuits." *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 351 F. Supp. 2d 79, 96 n.17 (S.D.N.Y. 2004) (citations omitted). Bankruptcy courts may take judicial notice of prior decisions or filings in the same bankruptcy case. *See, e.g.*, *In re AMR Corp.*, 567 B.R. 247, 250 & n.7 (Bankr. S.D.N.Y. 2017) (taking judicial notice of prior decisions in "several different adversary proceedings in th[e] bankruptcy" for purposes of considering a motion to dismiss an

12

adversary complaint); *In re 477 W. 142nd St. Hous., Dev. Fund Corp.*, No. 15-12178, 2020 WL 3067733, at *7 (Bankr. S.D.N.Y. June 8, 2020) (similar).

34.    Finally, courts may consider documents that, although not expressly referenced in the complaint, are "nevertheless 'integral' to the complaint." *Goel*, 820 F.3d at 559. "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Id.* (citation omitted). The "integral" material is typically "a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). Consideration of such "integral" documents thus "prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting." *Id.*

## **ARGUMENT**

### I.    **The Law of the Case Bars Plaintiff from Litigating His Breach-of-Contract Claim in this Adversary Proceeding**

35.    After nearly a month of careful deliberation, this Court issued its Earn Order on January 4, 2023, establishing the law of the case in these bankruptcy proceedings that: (a) assets in Earn Accounts were "presumptively property of the estate and not property of the Account Holders" and (b) related creditor claims would be resolved in the claims resolution process. Earn Order at 30. Recognizing that "[t]here simply will not be enough value available to repay all Account Holders in full," the Court established "a fair process that ensures that all creditors are made as whole as possible." *Id.* at 6, 30 n.26. Individuals, such as Plaintiff, are required to litigate any breach-of-contract claims through the claims resolution process, where they will have a full

and fair opportunity to present their cases. *See id.* at 45. This Court has already invoked the law of the case established in the Earn Order to deny three motions seeking to establish ownership of funds in Earn Accounts. *See* Kwok Denial at 4; Khanuja Denial at 4; Gallagher Denial at 2. As a matter of law and equity, it should do the same here and bar Plaintiff from litigating his claim through this adversary proceeding.

36.     The "law of the case" doctrine dictates that "when a court decides a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 7–8 (2d Cir. 1996); *see also In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991) ("Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation."). "[T]he law-of-the-case doctrine [is] driven by considerations of fairness to the parties, judicial economy, and the societal interest in finality." *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009); *see also In re PCH Assocs.*, 949 F.2d at 592.

37.     Courts apply the law-of-the-case doctrine "when the[] prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication." *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001). Under the doctrine, "a court should adhere to its earlier decisions in subsequent stages of litigation unless compelling reasons counsel otherwise." *In re Motors Liquidation Co.*, 585 B.R. 708, 725 (Bankr. S.D.N.Y. 2018) (Glenn, J.).

38.     The fact that a particular order or decision is appealed does not preclude that decision from being law of the case. *See In re Hypnotic Taxi LLC*, 543 B.R. 365, 372 (Bankr. E.D.N.Y. 2016) ("The pendency of an appeal, absent a stay, does not affect the status of a finding as law of the case"); *In re Klaas*, 548 B.R. 414, 422 (Bankr. W.D. Pa. 2016) (similar); *Todd v.*

*Russell*, 1 F. Supp. 788, 790 (S.D.N.Y. 1932) (similar).

39.     Bankruptcy courts in the district have applied the law-of-the-case doctrine to dismiss adversary complaints that attempt to relitigate issues subject to prior rulings.  In *In re AMR Corp.*, for instance, the court dismissed claims in an adversary complaint based on a previous decision in a related adversary proceeding involving the same parties.  *See* 567 B.R. at 252–53. The court found that the instant claims were "simply a thinly veiled attempt to make an end run around the prior rulings [in the other adversary proceeding]," noting that its prior rulings limiting the scope of claims "reflected a concern about the duplication of claims and inefficiency in the litigation of these disputes." *Id.* at 255, 257.  The court thus invoked law-of-the-case to avoid further duplicative proceedings regarding issues on which it had already ruled.  *See id.* at 256.

40.     Similarly, in *In re 477 W. 142nd St. Hous., Dev. Fund Corp.*, the bankruptcy court dismissed claims in an adversary proceeding about issues and arguments "substantially similar" to those previously considered and rejected by the court.  2020 WL 3067733, at *11.  In the main bankruptcy case, the plaintiff filed a "rejection motion" objecting to the confirmation of the final bankruptcy plan, despite not previously appealing the bankruptcy court's confirmation order.  *Id.* at *5.  The bankruptcy court denied the rejection motion, and the plaintiff appealed to the district court and Second Circuit, both of which denied the motion.  *Id.* at *5–*6.  The plaintiff then filed an adversary complaint, "again bas[ing] her arguments on the same issues that were previously raised and litigated" thrice over.  *Id.* at *11.  Because the adversary proceeding formed "part of the same 'case'" as the prior rulings, and because the complaint was "substantially similar" to the rejection motion, the bankruptcy court applied the law-of-the-case doctrine to dismiss the plaintiff's adversary proceeding.  *See id.* at *12.

41.     Here, the law of the case is that contract defenses and breach-of-contract claims for

Earn Account creditors are "explicitly reserved" for the claims resolution process. Earn Order at 43; *see also id.* at 30. Indeed, the Court has already applied the Earn Order to deny three motions seeking the same relief that Plaintiff seeks now, instructing those movants to present their claims through the claims-allowance process. *See* Kwok Denial at 4; Khanuja Denial at 4; Gallagher Denial at 2.

42.    Whether purposeful or not, Plaintiff's Amended Complaint is an effort to "make an end run around" that orderly process and to augment Plaintiff's individual recovery, to the detriment of other similarly situated creditors. The Earn Order bars those attempts. Plaintiff, like all other Earn Account Holders, must litigate his breach-of-contract claims through the claims resolution process, and nothing in the Amended Complaint warrants a different result.

43.    To be clear, the Debtors do not seek to prevent Plaintiff—or any other creditor— from litigating his breach-of-contract claims. Given the need for uniformity and equity during the bankruptcy process, however, the Court ordered that such claims be reserved for the claims resolution process. During that process, Plaintiff—and all other similarly situated creditors—will have "every opportunity to have a full hearing on the merits of the[ir] arguments." Earn Order at 45. Before then, however, the law of the case precludes some individuals from seeking to jump the line, litigate their claims, and recover 100% of their assets, to the detriment other creditors.

44.    The Earn Order represents the law of the case with respect to ownership of the Earn Account assets and litigation of claims related to those assets. This Court should bar Plaintiff's attempts to alternatively advance his breach-of-contract claim through this adversary proceeding.

## II.    **The Debtors Did Not Breach the Terms of Use When They Prevented Plaintiff from Utilizing the Swap Feature**

45.    Even setting aside the law of the case, Plaintiff's Amended Complaint should be dismissed because Plaintiff has failed to allege facts demonstrating a breach of the Terms of Use.

16

*See, e.g., Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 624 (S.D.N.Y. 2013) ("A sufficient pleading for breach of contract must, at a minimum, allege the terms of the contract, each element of the alleged breach and the resultant damages in a plain and simple fashion." (internal quotation marks omitted)).

46.     The Terms of Use Version 8 is governed by New York law. *See* Terms of Use Version 8 § 33.  Under New York law, "[t]he essential elements of a cause of action to recover damages for breach of contract are (1) the existence of an enforceable contract, (2) the plaintiff's performance pursuant to that contract, (3) the defendant's breach of the contract, and (4) damages resulting from that breach." *Nassau Operating Co. v. DeSimone*, 206 A.D.3d 920, 926 (N.Y. App. Div. 2022).  A "breach" equates to "failure of [a] defendant to perform" in accordance with the contract.  *Cisco Sys., Inc. v. Synamedia Ltd.*, 557 F. Supp. 3d 464, 472 n.5 (S.D.N.Y. 2021).

47.     "When a contract governed by New York law is unambiguous, the meaning of that contract is a question of law that the Court may decide on a Rule 12(b) or Rule 12(c) motion." *Surrey Propco LLC v. Denihan Ownership Co.*, No. 21-cv-8616, 2022 WL 2718205, at *5 (S.D.N.Y. July 13, 2022) (internal quotation marks omitted); *see also Hartford Underwriters Ins. Co. v. Hanover Ins. Co.*, 122 F. Supp. 3d 143, 148 (S.D.N.Y. 2015) ("Issues of contract interpretation are generally matters of law and therefore are suitable for disposition on a motion to dismiss."), *aff'd*, 653 F. App'x 66 (2d Cir. 2016).  A contract is "unambiguous" where "the agreement on its face is reasonably susceptible of only one meaning."  *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569–70 (2002).  "Whether the contract is unambiguous is a question of law for the court." *Continental Ins. Co. v. Atlantic Cas. Ins. Co.*, 603 F.3d 169, 180 (2d Cir. 2010) (internal quotation marks omitted).

48.     In determining the contractual rights of the parties, a court must begin with the

agreement itself. *See Wedgewood Care Cntr., Inc. v. Kravitz*, 198 A.D.3d 124, 132 (N.Y. App.

Div. 2021) ("Where the parties' agreement is before the court in a breach of contract action, its

provisions establish the rights of the parties and prevail over conclusory allegations of the

complaint." (internal quotation marks omitted)); *USI Ins. Servs. LLC v. Miner*, 801 F. Supp. 2d

175, 185 (S.D.N.Y. 2011) (similar).

49.     On a Rule 12(b)(6) motion, a "breach of contract claim must be dismissed where

the unambiguous terms of the contract do not support a plaintiff's claim." *Spinelli v. Nat'l Football

League*, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015); *see also Soroof Trading Dev. Co. v. GE Fuel

Cell Sys. LLC*, 842 F. Supp. 2d 502, 509–10 (S.D.N.Y. 2012). A court cannot "supply a specific

obligation the parties themselves did not spell out" in the complaint. *Tonking v. Port Auth. of N.Y.

& N.J.*, 3 N.Y.3d 486, 490 (2004); *see also Spinelli*, 96 F. Supp. 3d at 131. Rather, the complaint

must "identify, in [a] non-conclusory fashion, the specific terms of the contract that a defendant

has breached," or else it "must be dismissed." *Hudson Neurosurgery, PLLC v. UMR, Inc.*, No. 20-

CV-9642, 2022 WL 902107, at *4 (S.D.N.Y. Mar. 28, 2022); *see also Negrete v. Citibank, N.A.*,

187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016).

50.     Here, the parties' contractual rights and obligations are defined by the Terms of

Use. Plaintiff alleges that the Debtors violated the Terms of Use by "refus[ing] to allow [Plaintiff]

to use the current assets that were and are currently still on hand in his [Earn] account to resolve

the demand of the Margin Call or by paying off the loan interest and balance as stated in their

agreed upon contract." Amended Complaint at 5–6. In support of his claims, Plaintiff cites only

Sections 4.C and 4.D, describing the Debtors' "Swap" and "Earn" services, and Section 11,

describing the withdrawal procedures, of the Terms of Use. Plaintiff ostensibly claims that the

Debtors' refusal, as a result of the Pause, to Swap assets in his Earn Account for USDC amounts

to a breach of the Debtors' obligations under Sections 4.C and 11. *Id.* Plaintiff's Amended Complaint fails to state a claim for breach of contract, however, because it does not allege any wrongdoing or failure of the Debtors to perform under the contract.

51.     ***First***, any allegations that the Debtors prevented Plaintiff from internally transferring assets from his Earn Account to a Custody wallet to meet the margin call on his loan is flatly controverted by the exhibits attached to the Amended Complaint, which document Plaintiff's communications with Celsius employees regarding his margin call. *See supra* ¶ 19. The communications plainly show that Celsius employees ***permitted*** the internal transfer of assets from Plaintiff's Earn Account and requested Plaintiff's authorization to effect such a transfer. *See, e.g.*, *id.*, Ex. 2 at 7 ("Please note that your request for internal transfer has been escalated to our dedicated team, and we will notify you as soon as the action is completed."); *id.*, Ex. 2 at 8 ("We can initiate a transfer of assets from the Earn service to your Custody Wallet in order to respond to your Margin Call. … If you wish to proceed, please confirm by indicating below that you 'Confirm' …."). It was Plaintiff's refusal to grant such authorization and insistence on paying off the loan balance that prevented the transfer of assets to meet the margin call. Plaintiff's conclusory statements on this issue are flatly controverted by the pled facts.

52.     ***Second***, Plaintiff has failed to demonstrate a breach based on the alleged refusal to Swap Plaintiff's Earn Account assets for USDC. The Terms of Use, in multiple provisions, clearly and unambiguously grant the Debtors the right to restrict or terminate a customer's ability to access his account or use certain services, *in the Debtors' sole discretion*. For instance, Section 4.A states, in capitalized, bold lettering, in relevant part: "Celsius may restrict services in certain jurisdictions due to applicable laws, regulations, and business considerations, *at its sole discretion*." Terms of Use Version 8 § 4.A (emphasis added). Section 4.A. further provides:

> **Celsius may freeze, suspend or terminate your Celsius Account at any time *in its sole discretion***, in addition to taking any action and seeking any remedy it may be entitled to in law or equity, including if Celsius suspects your involvement in any fraudulent activity of any kind or other misuse of the Services, provision by you of inaccurate or misleading information, or your involvement in any money laundering or other financial crime related to you or your Celsius Account.

*Id.* (emphasis added).

53.    The Debtors' right to freeze or suspend an account or services is also discussed in Section 19.A: "[Celsius] ha[s] the right to suspend, freeze or close your Celsius Account at any time *for any reason* without advance notice, including by blocking your access to the Celsius Account or the Services." *Id.* at § 19.A (emphasis added).

54.    These Sections clearly and unambiguously grant the Debtors the unequivocal right, "at any time for any reason," to restrict, suspend, or terminate access to customer accounts or services on the Celsius platform, including the ability to restrict access to the Swap service. *Id.*

55.    To the extent Plaintiff alleges that the Debtors breached the Terms of Service by preventing Plaintiff from exercising his rights to an immediate call option under Section 11, any such right was "[s]ubject to these Terms," including the provisions allowing the Debtors to unilaterally suspend, freeze, or terminate certain accounts or services. *Id.* at § 11.  Thus, any ability Plaintiff had to exercise his call option was expressly qualified by the Debtors' superseding ability to freeze all account activity, including the Swap service.  *See Fid. Nat'l Title Ins. Co. v. Assured Title Agency, Corp.*, No. 507343/2020, 2021 WL 143474, at *4 (N.Y. Sup. Ct. Jan. 15, 2021) ("It is clear that the use of the term 'subject to,' in every instance means that whatever the provision, law, etc., if it is 'subject to' something, that something takes priority.").

56.    Because the Terms of Use clearly and unequivocally grant the Debtors the right to freeze or suspend accounts or certain services, their alleged refusal to execute a Swap on Plaintiff's Earn Account assets is not a breach of the Terms of Use.  *See Suthers v. Amgen, Inc.*, 441 F. Supp.

2d 478, 485 (S.D.N.Y. 2006) ("[C]ourts have refused attempts to impose liability on a party that

engaged in conduct permitted by a contract ….").  As Plaintiff alleges no other conduct forming

the basis for a breach-of-contract claim, the Court should dismiss the Amended Complaint for

failure to state a claim.  *See Spinelli*, 96 F. Supp. 3d at 131.

### III.    Even if the Amended Complaint Establishes a Prima Facie Case for Breach of the Terms of Use, Plaintiff Has Failed to Plead Facts Upon Which Relief Can Be Granted

57.    Even assuming, however, Plaintiff's Amended Complaint establishes a *prima facie*

claim for breach of the Terms of Use, the Amended Complaint still must be dismissed for failure

to plead sufficient facts upon which the requested relief can be granted.

### A.    The Amended Complaint Fails to Establish Entitlement to Compensatory Damages

58.    Plaintiff's second and fourth claims for relief seek compensatory damages as a

result of the Debtors' alleged breach and compensation for litigation costs.  Because damages are

"an element of a prima facie breach of contract claim," a plaintiff "must plausibly allege damages

resulting from the breach."  *EIG Cred. Mgmt. Co. v. CNX Res. Corp.*, No. 20-cv-2887, 2021 WL

1226415, at *8 (S.D.N.Y. Mar. 31, 2021).  "[D]amages may not be merely speculative, possible

or imaginary."  *Schonfeld v. Hilliard*, 218 F.3d 164, 172 (2d Cir. 2000); *Wolff & Munier, Inc. v.

Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1010 (2d Cir. 1991).

59.    Under New York's loss-mitigation rules, a party "injured by a breach of contract

has 'the duty of making reasonable exertions to minimize the injury."  *Summit Health, Inc. v. APS

Healthcare Bethesda, Inc.*, 993 F. Supp. 2d 379, 402 (S.D.N.Y. 2014), *aff'd*, 725 F. App'x 4 (2d

Cir. 2018); *see also Coastal Power Intern., Ltd. v. Transcontinental Cap. Corp.*, 10 F. Supp. 2d

345, 370 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 163 (2d Cir. 1999).  Failure to mitigate damages is an

affirmative defense "requir[ing] the defendant to establish not only that the plaintiff unreasonably

failed to mitigate, but that reasonable efforts would have reduced the damages."  *Mohegan Lake*

*Motors, Inc. v. Maoli*, 559 F. Supp. 3d 323, 346 (S.D.N.Y. 2021); *see also Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics, Inc.*, 819 F. Supp. 2d 230, 247 (S.D.N.Y. 2011).[6]

60.    Finally, in New York, "the expenses incurred by a litigant … in seeking legal redress against his adversary are not recoverable as general or special damages." *Am. Railcar Indus., Inc. v. GyanSys, Inc.*, No. 14-cv-8533, 2017 WL 11501888, at *18 (S.D.N.Y. 2017), *aff'd*, 764 F. App'x 57 (2d Cir. 2019).

61.    Here, Plaintiff's second request for relief seeks compensation for "the assets," plus a five percent "premium" on those assets "due to the high volatility of crypto and the various fees associated with repurchasing his assets." Amended Complaint at 7. Alternatively, Plaintiff seeks "return of the offset of coins based on the days [*sic*] value that Mr. Shanks request [*sic*] the 3% fee that Celsius charged be returned." *Id.*

62.    With respect to Plaintiff's request compensatory damages, the Amended Complaint fails to plead the compensatory loss suffered as a result of the Debtors' alleged breach. To the extent that Plaintiff seeks recovery for the collateral liquidated in satisfaction of his loan, Plaintiff has failed to plead any damage resulting from said liquidation. Rather, the Amended Complaint alleges only that the Debtors' failure to swap assets in Plaintiff's Earn Account for USDC to pay off the loan would have prevented the liquidation of the collateral and implementation of a 3% service fee and would have transferred the remaining collateral to his Custody account. *Id.* at 6. The Amended Complaint does not identify any lost value on the liquidated assets, such as liquidation at less than fair market value. As such, Plaintiff has failed to establish any right to damages payable from the liquidation of the loan collateral.

---

[6]    "Affirmative defenses may be adjudicated at [the motion to dismiss] stage … where the facts necessary to establish the defense are evident on the face of the complaint." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013).

63.    Plaintiff also arbitrarily seeks a "5% premium due to the high volatility of crypto and the various fees associated with repurchasing his assets." Amended Complaint at 7. New York law does not entitle parties to recover damages based solely on such "[s]peculation or conjecture." *Wolff & Munier*, 946 F.2d at 1010; *see also Schonfeld*, 218 F.3d at 172. Plaintiff has pled no basis for his entitlement to this "premium" and associated fees as damages, so those claims are purely speculative and must be dismissed.

64.    In any event, Plaintiff's own failure to prevent liquidation of the collateral precludes his entitlement to these damages. *See, e.g.*, *Versatile Housewares & Gardening Sys.*, 819 F. Supp. 2d at 247 ("New York law requires the plaintiff in a breach of contract action to mitigate damages it incurs; failure to do so will result in the defendant not being charged with them.").

65.    Plaintiff's documents show that, despite being advised several times of options to pay off his loan or meet the loan's margin call, Plaintiff refused to take any action to prevent liquidation, even after the Debtors allegedly breached their obligations by refusing to Swap Plaintiff's Earn assets. *See, e.g.*, Amended Complaint, Ex. 2 at 5 ("If you wish to proceed with transferring the BTC [to meet the margin call], please approve the message you've sent. If you wish to close your loan, please transfer into your account the needed amount of stablecoins, or send us a USD wire …."). Instead, Plaintiff insisted on utilizing the unavailable Swap service. *See id.* at 2, 4 ("Currently, withdrawals, swaps, and transfers between accounts have been stopped."; "[Celsius] can't swap coins on your behalf."). Even when advised of alternative options for repaying his loan, or meeting the margin call, Plaintiff did not pursue them, instead continuing to insist on the unavailable Swap service. *See id.* at 1, 5 ("I wish to close the loan with the funds I have available in my account. This is the only coarse [*sic*] of action I am willing to pursue.").

66.    Plaintiff cannot spin his own inaction into a claim for damages against the Debtor.

He is not entitled to compensation for the 3% service fee incurred on a liquidation that Plaintiff had every reasonable opportunity to prevent.

      B.    <u>The Amended Complaint Fails to Establish Rescission of the Contract</u>

67.    The Amended Complaint's first and third requests for relief seek declaratory judgment that Plaintiff's Earn Account assets are not part of the bankruptcy estate and authorization to withdraw such assets from the Celsius platform. But the Earn Order has already conclusively decided: "[B]ased on Celsius's unambiguous Terms of Use, and subject to any reserved defenses, that when the cryptocurrency assets … were deposited in Earn Accounts, the cryptocurrency assets became Celsius's property; and the cryptocurrency assets remaining in the Earn Accounts on the Petition Date became property of the Debtors' bankruptcy estates." Earn Order at 4. To establish entitlement to this relief, Plaintiff must show that the Terms of Use as between Plaintiff and the Debtors was terminated or rescinded prior to the Petition Date. Plaintiff has not done so here. Therefore, the Terms of Use remained operative as between Plaintiff and the Debtors as of the Petition Date, and Plaintiff is not entitled to the relief requested.

68.    Rescission is an "'extraordinary remedy' that is generally unavailable under New York law." *Shane Campbell Gallery, Inc. v. Frieze Events, Inc.*, 441 F. Supp. 3d 1, 5 (S.D.N.Y. 2020). Indeed, only a breach "go[ing] to the root of the agreement between the parties" gives rise to a right of rescission. *Septembertide Publ'g, B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 678 (2d Cir. 1989); *ESPN, Inc. v. Office of Com'r of Baseball*, 76 F. Supp. 2d 383, 392 (S.D.N.Y. 1999).

69.    Contrary to Plaintiff's assumptions, a contract does not automatically terminate upon breach. *See Waitkus v. Metro. Hous. Partners*, No. 114196/02, 2006 WL 6306863, at *1 (N.Y. Sup. Ct. Dec. 18, 2006) ("[A] breached contract … does not render it invalidated or unenforceable."), *aff'd*, 50 A.D.3d 260 (N.Y. App. Div. 2008).

70.     "Put more accurately, the power to terminate a continuing contract because of a particular breach of that contract is a power of election." *Apex Pool Equip. Corp. v. Lee*, 419 F.2d 556, 562 (2d Cir. 1969). "The right to terminate in the face of a breach is only an option to declare the contract at an end." *Id.*

71.     Thus, even where a party materially breaches a contract, thereby entitling the nonbreaching party to rescind the contract, "such rescission d[oes] not occur automatically without some affirmative steps" by the nonbreaching party. *Graham v. James*, 144 F.3d 229, 237–38 (2d Cir. 1998); *Morgan Art Found. Ltd. v. McKenzie*, No. 18 Civ. 4438, 2019 WL 2725625, at *2 (S.D.N.Y. July 1, 2019) ("[B]reach of contract does not automatically result in rescission."). "New York law does not presume the rescission or abandonment of a contract and the party asserting rescission or abandonment has the burden of proving it." *Graham*, 144 F.3d at 238.

72.     Even if Plaintiff's allegations of breach supported a presumed right of rescission, Plaintiff maintains the burden of proving that the Terms of Use were actually rescinded. *See id.* Plaintiff has not done so. With no allegations showing "affirmative steps" taken by the Plaintiff to rescind the contract, the Terms of Use remained operative despite the alleged breach and in effect through the Petition Date. *See id.* at 237–38.

73.     Because the Terms of Use continued to govern the relationship between Plaintiff and the Debtors as of the Petition Date, the assets in Plaintiff's Earn Account became property of the bankruptcy estate at that point. *See* Earn Order at 4. Plaintiff's claims for declaratory judgment and return of Earn Account assets therefore lack merit and must be denied.

## CONCLUSION

74.     For the foregoing reasons, the Court should dismiss Plaintiff's sole cause of action for breach of contract as to all Debtors.

New York, New York
Dated: February 22, 2023

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:          jsussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com

- and -

Judson Brown, P.C. (admitted *pro hac vice*)
T.J. McCarrick (admitted *pro hac vice*)
Leah Hamlin (admitted *pro hac vice*)
1301 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone:     (202) 389-5000
Facsimile:      (202) 389-5200
Email:          judson.brown@kirkland.com
                tj.mccarrick@kirkland.com
                leah.hamlin@kirkland.com

*Counsel to the Debtors and*
*Debtors in Possession*

*Proposed Counsel to the GK8 Debtors and*
*Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | )    Chapter 11 |
| | ) |
| CELSIUS NETWORK LLC, *et al.*,[1] | )    Case No. 22-10964 (MG) |
| | ) |
| Debtors. | )    (Jointly Administered) |
| | ) |
| FRED M. SHANKS, | ) |
| | ) |
| Plaintiff, | )    Adversary Proceeding No. 22-01190 (MG) |
| v. | ) |
| | ) |
| CELSIUS NETWORK LLC, *et al.*; | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER GRANTING DEBTORS' MOTION TO DISMISS**
**THE AMENDED COMPLAINT**

Upon the motion (the "<u>Motion</u>")[2] of the above-caption debtors an debtors in

possession (collectively, the "<u>Debtors</u>") for entry of an order (this "<u>Order</u>") dismissing the

Amended Complaint as more fully set forth in the Motion; and the Court having found that it has

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing*

*Order of Reference from the United states District court for the Southern District of New York*,

dated February 1, 2012, and the Court having found this is a core proceeding pursuant to 28 U.S.C.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not defined in this Order have the meanings given to such terms in the Motion.

§ 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefore, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Plaintiff's Amended Complaint is dismissed in its entirety.

New York, New York
Dated: _____, 2023

           _____

           THE HONORABLE MARTIN GLENN
           CHIEF UNITED STATES BANKRUPTCY JUDGE