**Hearing Date: July 18, 2023, at 10:00 a.m. (prevailing Eastern Time)**

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200

*Counsel to the Initial Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| FRED M. SHANKS, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding No. 22-01190 (MG) |
| v. | ) | |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**NOTICE OF HEARING ON DEBTORS' MOTION TO DISMISS THE SECOND**
**AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**PLEASE TAKE NOTICE** that a hearing on the *Debtors' Motion to Dismiss the Second Amended Complaint and Incorporated Memorandum of Law* (the "Motion") will be held on **July 18, 2023, at 10:00 a.m., prevailing Eastern Time** (the "Hearing") before the Honorable Martin Glenn, Chief United States Bankruptcy Judge.  In accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted in a hybrid fashion both in person and via Zoom for Government.  Those wishing to participate in the Hearing in person may appear before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York, in Courtroom No. 523, located at One Bowling Green, New York, New York 10004-1408.  Those wishing to participate in the Hearing in person are required to wear a mask when not speaking or presenting.  Parties wishing to appear at the Hearing live or via Zoom, whether making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.  Electronic appearances (eCourtAppearances) need to be made **by 4:00 p.m., prevailing Eastern Time, on July 17, 2023**.

**PLEASE TAKE FURTHER NOTICE** that due to the large number of expected participants in the Hearing and the Court's security requirements for participating in a Zoom for Government audio and video hearing, all persons seeking to attend the Hearing at 10:00 a.m., prevailing Eastern Time on July 18, 2023, must connect to the Hearing beginning at 9:00 a.m., prevailing Eastern Time on July 18, 2023.  When parties sign in to Zoom for Government and add their names, they must type in the first and last name that will be used to identify them at the Hearing.  Parties that type in only their first name, a nickname, or initials will not be admitted into the Hearing.  When seeking to connect for either audio or video participation in a Zoom for Government Hearing, you will first enter a "Waiting Room" in the order in which you seek to

2

connect.  Court personnel will admit each person to the Hearing from the Waiting Room after

confirming the person's name (and telephone number, if a telephone is used to connect) with their

eCourtAppearance.  Because of the large number of expected participants, you may experience a

delay in the Waiting Room before you are admitted to the Hearing.

   **PLEASE TAKE FURTHER NOTICE** that pursuant to the *Joint Stipulation and*

*Agreed Order By and Among the Debtors and Fred M. Shanks Setting Briefing Schedule* entered

by the Court on June 2, 2023 [Adv. Pro. No. 22-01190, Docket No. 25], Plaintiff's Response shall

be due on **July 7, 2023, by 4:00 p.m. prevailing Eastern Time**.  Any responses to the relief

requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy

Procedure, the Federal Rules of Civil Procedure, the Local Bankruptcy Rules for the Southern

District of New York, and all General Orders applicable to chapter 11 cases in the United States

Bankruptcy Court for the Southern District of New York; and (c) be filed electronically with the

Court on the docket of *Shanks v. Celsius Network LLC, et al.*, No. 22-01190 (MG) by registered

users of the Court's electronic filing system and in accordance with all General Orders applicable

to chapter 11 cases in the United States Bankruptcy court for the Southern District of New York

(which are available on the Court's website at http://www.nysb.uscourts.gov/).

   **PLEASE TAKE FURTHER NOTICE** that only those responses that are timely

filed, served, and received will be considered at the Hearing.  Failure to file a timely response may

result in entry of a final order granting the Motion as requested by the Debtors.

   **PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other

pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of

Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the Motion and other

pleadings    filed    in    these    chapter    11    cases    by    visiting    the    Court's    website    at
http://www.nysb.uscourts.gov/ in accordance with the procedures and fees set forth therein.

[*Remainder of this page intentionally left blank*]

Washington, D.C.
Dated: June 23, 2023

*/s/ Grace C. Brier*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Judson Brown, P.C. (admitted *pro hac vice*)
T.J. McCarrick (admitted *pro hac vice*)
Grace C. Brier (admitted *pro hac vice*)
Leah Hamlin (admitted *pro hac vice*)
1301 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone:      (202) 389-5000
Facsimile:      (202) 389-5200
Email:          judson.brown@kirkland.com
                tj.mccarrick@kirkland.com
                grace.brier@kirkland.com
                leah.hamlin@kirkland.com

- and -

Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

Hearing Date: July 18, 2023, at 10:00 a.m. (prevailing Eastern Time)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| FRED M. SHANKS, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding No. 22-01190 (MG) |
| | ) | |
| v. | ) | |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEBTORS' MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF CONSENT ............................................................................................ 2

FACTUAL BACKGROUND ............................................................................................. 2

    I.     Celsius Operations Prior to Bankruptcy .............................................................. 2

    II.    The Ownership of Earn Assets and Sale of Stablecoin Motion and Order ............. 3

    III.   Plaintiff's Adversary Complaint ......................................................................... 6

LEGAL STANDARD ........................................................................................................ 8

ARGUMENT ..................................................................................................................... 10

    I.     The Second Amended Complaint Does Not Provide Fair Notice of the Claims.. 10

    II.    The Law of the Case Bars Plaintiff from Litigating His Claims in this
           Adversary Proceeding. ....................................................................................... 12

    III.   The Debtors Did Not Breach the Terms of Use When They Prevented Plaintiff
           from Utilizing the Swap Feature. ........................................................................ 16

    IV.   The Contractual Relationship Between Celsius and Plaintiff Precludes
           Plaintiff's Constructive Trust and Unjust Enrichment Claims. ............................ 19

    V.    Plaintiff Fails to State a Claim for Deceptive Practices or Fraud. ........................ 21

          A.    Plaintiff Has Not Stated a Claim for Consumer Fraud or Deceptive
                 Trade Practices. ..................................................................................... 21

          B.    Plaintiff Has Not Stated a Claim for Fraudulent Misrepresentation. ......... 25

CONCLUSION ................................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 477 W. 142nd St. Hous., Dev. Fund Corp.*,
No. 15-12178, 2020 WL 3067733 (Bankr. S.D.N.Y. June 8, 2020) ...................................9, 14

*Am. Fin. Int'l Grp.-Asia, LLC v. Bennett*,
No. 05-cv-8988, 2007 WL 1732427 (S.D.N.Y. June 14, 2007) .............................................26

*Am. Med. Ass'n v. United Healthcare Corp.*,
No. 00 Civ. 2800, 2007 WL 683974 (S.D.N.Y. Mar. 5, 2007) ...............................................20

*Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Secs. Corp.*,
351 F. Supp. 2d 79 (S.D.N.Y. 2004)......................................................................................9

*In re AMR Corp.*,
567 B.R. 247 (Bankr. S.D.N.Y. 2017) ........................................................................9, 13, 14

*Apex Pool Equip. Corp. v. Lee*,
419 F.2d 556 (2d Cir. 1969)................................................................................................19

*Aramony v. United Way of Am.*,
254 F.3d 403 (2d Cir. 2001)................................................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................................8

*Asimov v. Trident Media Grp., LLC*,
No. 654129/2013, 2014 WL 4109705 (N.Y. Sup. Ct. Aug. 15, 2014)...................................23

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)..................................................................................................10

*B&M Linen, Corp. v. Kannegiesser, USA, Corp.*,
679 F. Supp. 2d 474 (S.D.N.Y. 2010)..................................................................................25

*Barnes v. State Farm Mutual Auto. Ins. Co.*,
497 P.3d 5 (Colo. App. 2021) .............................................................................................25

*Baron v. Pfizer, Inc.*,
42 A.D.3d 627 (N.Y. App. Div. 2007) ............................................................................22, 25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................................8

*Bernardi v. Spyratos*,
 79 A.D.3d 684 (N.Y. App. Div. 2010) ....................................................................25

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
 949 F. Supp. 2d 486 (S.D.N.Y. 2013)...................................................................20

*C=Holdings B.V. v. Asiarim Corp.*,
 992 F. Supp. 2d 223 (S.D.N.Y. 2013)...................................................................21

*Caputo v. Pfizer, Inc.*,
 267 F.3d 181 (2d Cir. 2001)...........................................................................26, 27

*Chen v. Dunkin' Brands, Inc.*,
 954 F.3d 492 (2d Cir. 2020)................................................................................22

*Chiste v. Hotels.com L.P.*,
 756 F. Supp. 2d 382 (S.D.N.Y. 2010)..................................................................22

*Cisco Sys., Inc. v. Synamedia Ltd.*,
 557 F. Supp. 3d 464 (S.D.N.Y. 2021)..................................................................16

*Clark-Fitzpatrick, Inc. v. Long Island R.R.*,
 70 N.Y.2d 382 (1987) .........................................................................................20

*Cont'l Ins. Co. v. Atlantic Cas. Ins. Co.*,
 603 F.3d 169 (2d Cir. 2010)................................................................................16

*Crigger v. Fahnestock & Co.*,
 443 F.3d 230 (2d Cir. 2006)................................................................................27

*Cyganowski v. Beechwood Re Ltd.*,
 427 F. Supp. 3d 395 (S.D.N.Y. 2019)..................................................................10

*Daniel v. Mondelez Int'l, Inc.*,
 287 F. Supp. 3d 177 (E.D.N.Y. 2018) ............................................................26, 28

*DeLuca v. AccessIT Grp., Inc.*,
 695 F. Supp. 2d 54 (S.D.N.Y. 2010)......................................................................9

*DiMuro v. Clinique Laboratories, LLC*,
 572 Fed. App'x 27 (2d Cir. 2014).........................................................................10

*Discon Inc. v. NYNEX Corp.*,
 No. 90-cv-546A, 1992 WL 193683 (W.D.N.Y. June 23, 1992).............................12

*Fenton v. Criterion Worldwide*,
 No. 18 Civ. 10224, 2020 WL 1489795 (S.D.N.Y. Mar. 27, 2020) ...................27, 28

*Fid. Nat'l Title Ins. Co. v. Assured Title Agency, Corp.*,
    No. 507343/2020, 2021 WL 143474 (N.Y. Sup. Ct. Jan. 15, 2021)......................................19

*In re First Cent. Fin. Corp.*,
    377 F.3d 209 (2d Cir. 2004)................................................................................................20

*In re Fyre Festival Litig.*,
    399 F. Supp. 3d 203 (S.D.N.Y. 2019)............................................................................26, 28

*Geldzahler v. N.Y. Med. Coll.*,
    663 F. Supp. 2d 379 (S.D.N.Y. 2009)..................................................................................9

*Gennari v. Weichert Co. Realtors*,
    148 N.J. 582 (1997) ............................................................................................................25

*Goel v. Bunge, Ltd.*,
    820 F.3d 554 (2d Cir. 2016)..................................................................................................9

*Graham v. James*,
    144 F.3d 229 (2d Cir. 1998)................................................................................................19

*Greenfield v. Philles Records*,
    98 N.Y.2d 562 (2002) ..........................................................................................................16

*Hudson Neurosurgery, PLLC v. UMR, Inc.*,
    No. 20-cv-9642, 2022 WL 902107 (S.D.N.Y. Mar. 28, 2022)............................................17

*In re Hypnotic Taxi LLC*,
    543 B.R. 365 (Bankr. E.D.N.Y. 2016)................................................................................13

*Indep. Ord. of Foresters v. Donald, Lufkin & Jenrette, Inc.*,
    157 F.3d 933 (2d Cir. 1998)................................................................................................25

*Infanti v. Scharpf*,
    No. 06-cv-6552, 2008 WL 2397607 (E.D.N.Y. June 10, 2008)............................................12

*Joyner v. Greiner*,
    195 F. Supp. 2d 500 (S.D.N.Y. 2002)..................................................................................9

*Kenlock v. Orange County*,
    No. 20-cv-3693, 2021 WL 4267309 (S.D.N.Y. Sept. 20, 2021) ..........................................11

*In re Klaas*,
    548 B.R. 414 (Bankr. W.D. Pa. 2016), *aff'd*, 555 B.R. 500 (W.D. Pa. 2016),
    *aff'd*, 858 F.3d 820 (3d Cir. 2017) ......................................................................................13

*Lafurno v. Walters*,
    No. 18-cv-1935, 2018 WL 2766144 (E.D.N.Y. June 8, 2018)............................................11

*Lerner v. Fleet Bank, N.A.*,
 459 F.3d 273 (2d Cir. 2006) ............................................................................................10, 27

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
 672 F.3d 155 (2d Cir. 2012) (per curiam) ...............................................................................25

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
 797 F.3d 160 (2d Cir. 2015) .....................................................................................................10

*Meadows v. United Servs., Inc.*,
 963 F.3d 240 (2d Cir. 2020) (per curiam) ................................................................................9

*Millennium Health, LLC v. EmblemHealth, Inc.*,
 240 F. Supp. 3d 276 (S.D.N.Y. 2017) ......................................................................................22

*Mills v. Polar Molecular Corp.*,
 12 F.3d 1170 (2d Cir. 1993) ...............................................................................................10, 28

*Morgan Art Found. Ltd. v. McKenzie*,
 No. 18-Civ. 4438, 2019 WL 2725625 (S.D.N.Y. July 1, 2019) .............................................19

*In re Motors Liquidation Co.*,
 585 B.R. 708 (Bankr. S.D.N.Y. 2018) ......................................................................................13

*Nassau Operating Co. v. DeSimone*,
 206 A.D.3d 920 (N.Y. App. Div. 2022) ...................................................................................16

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
 85 N.Y.2d 20 (1995) ..................................................................................................................22

*In re PCH Assocs.*,
 949 F.2d 585 (2d Cir. 1991) ......................................................................................................13

*Pescatore v. Pan Am. World Airways, Inc.*,
 97 F.3d 1 (2d Cir. 1996) ............................................................................................................13

*Phillips v. Reed Grp., Ltd.*,
 955 F. Supp. 2d 201 (S.D.N.Y. 2013) ......................................................................................10

*Preira v. Bancorp Bank*,
 885 F. Supp. 2d 672 (S.D.N.Y. 2012) ................................................................................22, 24

*Ramiro Aviles v. S&P Glob., Inc.*,
 380 F. Supp. 3d 221 (S.D.N.Y. 2019) ................................................................................26, 28

*Rand v. Travelers Indemnity Co.*,
 No. 21 CV 10744, 2022 WL 15523722 (S.D.N.Y. Oct. 27, 2022) ..........................................21

*Riker, Danzig, Scherer, Hyland & Perretti, LLP v. Premier Cap., LLC,*
  No. 15-cv-8293, 2016 WL 5334980 (S.D.N.Y. Sept. 22, 2016) .............................................26

*Salahuddin v. Cuomo,*
  861 F.2d 40 (2d Cir. 1988).....................................................................................................11

*Simonds v. Simonds,*
  45 N.Y.2d 233 (1978) ............................................................................................................20

*SKR Res. Inc. v. Players Sports, Inc.,*
  938 F. Supp. 235 (S.D.N.Y. 1996) .........................................................................................26

*Small v. Lorillard Tobacco Co.,*
  94 N.Y.2d 43 (1999) ..............................................................................................................22

*Spinelli v. Nat'l Football League,*
  96 F. Supp. 3d 81 (S.D.N.Y. 2015) ........................................................................................17

*Surrey Propco LLC v. Denihan Ownership Co.,*
  614 F. Supp. 3d 62 (S.D.N.Y. 2022).......................................................................................16

*Tardibuono-Quigley v. HSBC Mortg. Corp.,*
  No. 15-cv-6940(KMK), 2017 WL 1216925 (S.D.N.Y. Mar. 30, 2017)...........................23, 24

*Todd v. Russell,*
  1 F. Supp. 788 (S.D.N.Y. 1932).............................................................................................13

*Tomasino v. Estee Lauder Cos.,*
  44 F. Supp. 3d 251 (E.D.N.Y. 2014) .................................................................................21, 23

*Tonking v. Port Auth. of N.Y. & N.J.,*
  3 N.Y.3d 486 (2004) ..............................................................................................................17

*Transnational Mgmt. Sys. II, LLC v. Carcione,*
  No. 14-cv-2151, 2016 WL 7077040 (S.D.N.Y. Dec. 5, 2016) ................................................26

*Twohig v. Shop-Rite Supermarkets, Inc.,*
  519 F. Supp. 3d 154 (S.D.N.Y. 2021)......................................................................................24

*United States v. Carr,*
  557 F.3d 93 (2d Cir. 2009).....................................................................................................13

*In re USAA Data Sec. Litig.,*
  No. 21 CV 5813, 2022 WL 3348527 (S.D.N.Y. Aug. 12, 2022) ......................................21, 24

*Waitkus v. Metro. Hous. Partners,*
  No. 114196/02, 2006 WL 6306863 (N.Y. Sup. Ct. Dec. 18, 2006), *aff'd*, 50
  A.D.3d 260 (N.Y. App. Div. 2008) ........................................................................................19

*Warren v. John Wiley & Sons, Inc.*,
   952 F. Supp. 2d 610 (S.D.N.Y. 2013) ................................................................16

*Watts v. Jackson Hewitt Tax Serv. Inc.*,
   579 F. Supp. 2d 334 (E.D.N.Y. 2008) ...............................................................22

*Wedgewood Care Cntr., Inc. v. Kravitz*,
   198 A.D.3d 124 (N.Y. App. Div. 2021) .............................................................17

*Wiatt v. Winston & Strawn LLP*,
   838 F. Supp. 2d 296 (D.N.J. 2012) ....................................................................25

*Wynder v. McMahon*,
   360 F.3d 73 (2d Cir. 2004) .................................................................................11

**Rules**

Fed. R. Bankr. P. 7008 .............................................................................................11

Fed. R. Bankr. P. 7009 .............................................................................................10

Fed. R. Bankr. P. 7012 ...........................................................................................1, 8

Fed. R. Civ. P. 8(a) ..................................................................................................11

Fed. R. Civ. P. 9(b) ..................................................................................................10

Fed. R. Civ. P. 12(b)(6) .............................................................................................8

Pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this Adversary Proceeding through Federal Rule of Bankruptcy Procedure 7012, Debtor Celsius Network LLC and its debtor affiliates (together, the "<u>Debtors</u>," "<u>Celsius</u>," or "<u>Defendants</u>"), as debtors and debtors in possession in the above-captioned chapter 11 cases, respectfully submit this Motion to Dismiss Plaintiff's Second Amended Complaint (the "<u>Motion</u>") and seek entry of an order (the "<u>Proposed Order</u>"), substantially in the form attached hereto as **Exhibit A**. In support of the Motion, the Debtors state as follows:

## <u>INTRODUCTION</u>

1.      Plaintiff's Second Amended Complaint, filed in response to the Debtors' original motion to dismiss his First Amended Complaint, is his third bite at the apple. In a heavily revised pleading, Plaintiff seemingly copies entire arguments and allegations from an adversary complaint filed by another account holder, Daniel Frishberg, at times incorporating factual contentions that are not part of his case. *See, e.g.*, Second Amended Complaint at 23 (referencing "my [Mr. Frishberg's] Lift Stay Motion hearing on September 1st, 2022"); *id.* at 42 (referencing a closure of an account on July 5, 2022). While *pro se* pleadings should be construed liberally, the Court and the Debtors should not be required to wade through Plaintiff's ambiguous and inconsistent factual allegations to search for a viable claim. The Complaint fails to provide the Debtors fair notice of the claims against them and should be dismissed as noncompliant with Rule 8 of the Federal Rules of Civil Procedure.

2.      Not only are Plaintiff's allegations and claims vague and ambiguous, they are explicitly precluded by the Earn Order. In establishing the Debtors' ownership over assets in Earn Accounts, the Earn Order further held that damages claims, like Plaintiff's here, are explicitly reserved for the claims resolution process. That decision was rooted in the fact that the Debtors do not have enough cryptocurrency to pay all creditors in full, and that some individuals should

not be rewarded for racing to the courthouse first. Thus, even if the Court could interpret Plaintiff's Second Amended Complaint, it should apply the Earn Order here to dismiss that Complaint in full, as it has already done on several occasions.

3.      Moreover, though this Court need not reach the merits of Plaintiff's claims for the reasons stated above, those claims are deficient as a matter of law. Plaintiff has filed a breach of contract claim, but his complaint fails to allege any breach of the Terms of Use—the governing contract between the parties—and fails to establish any entitlement to the other extraordinary relief requested. Thus, even if Plaintiff's case were procedurally proper, his causes of action still must be dismissed for failure to state a claim upon which relief can be granted.

## STATEMENT OF CONSENT

4.      The Debtors confirm their consent to the Court entering final orders or judgments in connection with this adversary proceeding.

## FACTUAL BACKGROUND

### I.      Celsius Operations Prior to Bankruptcy

5.      Celsius is a crypto-based financial platform that provides financial services to institutional, corporate, and retail customers across more than 100 countries. Celsius was created in 2017 and was one of the first cryptocurrency platforms that allowed customers to transfer their cryptocurrency assets and (a) earn rewards on those assets through an "Earn Account" and/or (b) take out loans using those assets as collateral through a "Borrow Account."[1]

6.      On June 12, 2022, in an effort to stabilize its business and protect its users, Celsius paused all withdrawals, swaps, and transfers on its platform (the "Pause"). Because of the Pause,

---

[1]    A full description of Celsius' business operations and the facts and circumstances leading to these chapter 11 cases is set forth in the *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* [Case No. 22-10964, Docket No. 23] (the "Mashinsky First Day Declaration").

customers were, among other things, prevented from withdrawing assets from their Celsius accounts or swapping coins on the platform.

7.     On July 13, 2022, (the "Petition Date"), each Debtor entity filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  On July 19, 2022, the Court authorized the joint administration and procedural consolidation of the Chapter 11 cases.  *See Order Directing (I) Joint Administration of the Chapter 11 Cases and (II) Granting Related Relief* [Case No. 22-10964, Docket No. 53].

## II.     The Ownership of Earn Assets and Sale of Stablecoin Motion and Order

8.     As recognized by the Debtors and the Court from the earliest days of the bankruptcy, ownership of the assets transferred by customers into the Debtors' Earn Accounts was a critical threshold issue to resolution of these cases.

9.     In a series of motions, the Debtors teed up that precise issue.  *See Debtors' Motion Seeking Entry of an Order (I) Permitting the Sale of Stablecoin in the Ordinary Course and (II) Granting Related Relief* [Case No. 22-10964, Docket No. 832]; *Debtors' Amended Motion for Entry of an Order (I) Establishing Ownership of Assets in the Debtors' Earn Program, (II) Permitting the Sale of Stablecoin in the Ordinary Course and (III) Granting Related Relief* [Case No. 22-10964, Docket No. 1325] (the "Earn Motion").  Specifically, the Earn Motion asked the Court to answer "the largest question relating to property of the estate: who holds title to the assets transferred into the Debtors' earn program and any proceeds thereof."   Earn Motion, ¶ 1. Importantly, the Earn Motion "d[id] not seek findings with respect to (x) the ownership of assets in the Debtors' Custody Program, Withhold Accounts, or Borrow Program or (y) whether any Account Holder has valid defenses to the purported contract between Account Holders and the

3

Debtors under the Terms of Use, and all parties' rights [were] reserved with respect to each of the foregoing." *Id.* at ¶ 16.

10.    On December 5, 2022, following extensive briefing, the Court held an evidentiary hearing on the Earn Motion wherein the Debtors' counsel, counsel to the UCC, the United States Trustee, state regulators, and numerous creditors had an opportunity to present evidence and argument.

11.    On January 4, 2023, the Court issued its *Memorandum Opinion and Order Regarding Ownership of Earn Account Assets* [Case No. 22-10964, Docket No. 1822] (the "Earn Order"). The Court concluded, "based on Celsius's unambiguous Terms of Use, and subject to any reserved defenses, that when the cryptocurrency assets . . . were deposited in Earn Accounts, the cryptocurrency assets became Celsius's property; and the cryptocurrency assets remaining in the Earn Accounts on the Petition Date became property of the Debtors' bankruptcy estates." Earn Order at 4.

12.    In so holding, the Court also emphasized: "A fundamental principle of the Bankruptcy Code is equality of distribution. There simply will not be enough value available to repay all Account Holders in full. If only some Account Holders prevail with their arguments that they own the cryptocurrency assets in their accounts, they hope to recover 100% of their claims, while most of the Account Holders are left as unsecured creditors and may recover only a small percentage of their claims." *Id.* at 6.

13.    At multiple points in the Earn Order, the Court explicitly noted that its findings "d[id] not mean holders of Earn Assets will get nothing from the Debtors." *Id.* at 30. Rather, "[t]he amount of allowed unsecured claims is subject to later determination in this case (*through the claims allowance process*) and may potentially include damages asserted by Account Holders,

including breach of contract, fraud or other theories of liability." *Id.* (emphasis added); *see also id.* at 43 (noting that "creditors' rights with respect to [breach-of-contract, fraudulent inducement, and other] claims are *reserved for the claims resolution process*," but "do not bear on the question of title and ownership presented in the [Earn Motion]" (emphasis added)); *id.* at 45 ("[C]reditor's rights with respect to various defense to and breach of contract claims are reserved. Creditors will have every opportunity to have a full hearing on the merits of these arguments *during the claims resolution process*." (emphasis added)).

14.     This Court has already denied three *pro se* motions pursuant to the Earn Order. On January 6, 2023, the Court denied Kwok Mei Po's motion seeking a ruling that she held full title and ownership to funds in her Earn Accounts. *See Order Denying Kwok Mei Po's Motion Seeking a Ruling of Full Ownership of Funds* [Case No. 22-10964, Docket No. 1833] (the "<u>Po Denial</u>"). The Court held that Po's "colorable claim[s]" to breach of contract "would not affect the ownership of cryptocurrency deposited in Po's Earn Accounts," and that Po should "assert [her breach-of-contract] claims in the claims-allowance process." *Id.* at 3–4.

15.     On January 25, 2023, this Court once again invoked the Earn Order to deny Kulpreet Khanuja's motion for a ruling that his Earn assets are not part of the Debtors' bankruptcy estates. *See Order Denying Kulpreet Khanuja's Motion Seeking a Ruling that Personal Earn Assets Are Not Property of the Debtors' Estates* [Case No. 22-10964, Docket No. 1934] (the "<u>Khanuja Denial</u>"). Similar to the Kwok Denial, the Court ruled that "any claim that Celsius breached its contract with Khanuja would not affect the ownership of cryptocurrency in Khanuja's account," and further held that with respect to any potential breach-of-contract claim, Khanuja could "file a proof of claim and assert such claims in the claims-allowance process." *Id.* at 4.

16.    On that same day, January 25, 2023, the Court also denied Rebecca Gallagher's motion for a ruling that her Earn assets are not part of the Debtors' estates on similar grounds. *See Order Denying Rebecca Gallagher's Motion Seeking a Ruling that All the Coins Deposited in Celsius Earn Are Her Property* [Case No. 10964, Docket No. 1933] (the "Gallagher Denial"). In that ruling, the Court once again noted that pursuant to the Earn Order, any contract defenses or breach-of-contract claims "are reserved for the claims resolution process." *Id.* at 2.

### III.    Plaintiff's Adversary Complaint[2]

17.    On December 20, 2022, Plaintiff Fred M. Shanks ("Mr. Shanks" or "Plaintiff") filed his *Complaint for Declaratory Judgment* [Adv. Pro. No. 22-01190, Docket No. 1]. On January 7, 2023, Plaintiff filed an *Amended Complaint Against All Defendants* [Adv. Pro. No. 22-01190, Docket No. 8] (the "First Amended Complaint"). On May 16, 2023, Plaintiff filed an *Amended Complaint Against All Defendants* [Adv. Pro. No. 22-01190, Docket No. 21] (the "Second Amended Complaint" or the "Complaint").

18.    As a preliminary matter, Plaintiff's Second Amended Complaint is rife with inconsistent factual allegations and erroneous statements. This is due, in part, to the fact that Plaintiffs' Second Amended Complaint lifts arguments and allegations—many times word-for-word—from the adversary complaint filed by another customer, Daniel Frishberg, in Adversary Case No. 22-01179. *Compare generally* Second Amended Complaint *with Amended Complaint Against All Defendants* [Adv. Pro. No. 22-01179, Dkt. No. 18]. At times, the Complaint appears to incorporate arguments and factual allegations from Mr. Frishberg that do not apply to Plaintiff's case. *See, e.g.*, Second Amended Complaint at 23 (referencing oral argument at "***my*** Lift Stay

---

[2]    Due to the vague and ambiguous nature of Plaintiff's factual allegations in the Second Complaint, the Debtors are forced to draw background facts regarding Plaintiffs' Celsius Account from prior pleadings.

Motion hearing on September 1st, 2022," a hearing that was initiated by Mr. Frishberg and did not involve Mr. Shanks); *id.* at 38–39, 42 (referencing an attempted closure of Plaintiff's loan account on July 5, 2022, despite allegations in previous iterations of Plaintiff's complaint that Plaintiff attempted to close his loan on June 15, 2022).

19.    Based on prior pleadings, Plaintiff created his Celsius account on November 23, 2020. *See* First Amended Complaint, Ex. 3 at 10. At the time he registered for the platform, Plaintiff accepted Version 5 of the General Terms of Use (the "Terms of Use Version 5").[3] Plaintiff's purported transaction history shows his continued use of the Celsius platform following the implementation of Version 8 of the Terms of Use ("Terms of Use Version 8") on April 15, 2022, establishing that he accepted those Terms as well. *See* Earn Order at 5 (noting that Terms of Use Version 8 became effective on April 15, 2022). During all periods relevant to the Second Amended Complaint, the relationship between Plaintiff and the Debtors was governed by Terms of Use Version 8.

20.    The Second Amended Complaint appears to advance seven claims for relief against the Debtors: declaratory judgment, constructive trust, deceptive trade practices, consumer fraud, fraudulent misrepresentation, breach of contract, and unjust enrichment. Second Amended Complaint at 6, 58, 61–63, 65, 66, 72–76. The overwhelming majority of the Complaint focuses on allegations that the Terms of Use are ambiguous as to the transfer of ownership of digital assets and that the Debtors breached those Terms when, after the Pause, they prevented Plaintiff from using the Swap feature to pay off his outstanding loan with Celsius using Earn Account funds. *Id.* at 8, 20. Plaintiff alleges that this purported breach effectively terminated the parties' contractual

---

[3]    Each historical iteration of the Terms of Use is provided in the *Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, Providing Terms of Use Dating Back to February 18, 2018* [Case No. 22-10964, Docket No. 393].

relationship under Terms of Use, including those terms establishing Celsius's ownership of the cryptocurrency in Plaintiff's Earn Account. *Id.* at 9, 21. Plaintiff's constructive trust and unjust enrichment causes of action rely upon this legal conclusion that the Terms of Use agreement was terminated.

21.    Plaintiff's remaining causes of action alleging deceptive trade practices, consumer fraud, and fraudulent misrepresentation allege that the Debtors materially misrepresented facts related to their business, including facts regarding financial health, ability to meet future obligations, and the ownership of customer assets transferred to Celsius. *See id.* at 61–64.

22.    Plaintiff seeks relief in the form of: (a) a ruling that Plaintiff's assets are not part of the estate; (b) return of assets in Plaintiff's Earn and Custody accounts, plus a 5% premium; (c) payment of all litigation expenses; (d) compensatory damages; (e) declaratory judgment that his damages are a non-preferential payment; and (f) in the alternative, a designation of Plaintiff's claim as "the highest priority claim." *Id.* at 72–74.

## **LEGAL STANDARD**

23.    Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012, states that a cause of action must be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

24.     Although a *pro se* litigant's complaint "must be construed liberally" in the face of a 12(b)(6) motion to dismiss, such complaint must still "state a plausible claim for relief." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (per curiam).  "[D]ismissal [of a *pro se* complaint] under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief…."  *Joyner v. Greiner*, 195 F. Supp. 2d 500, 503 (S.D.N.Y. 2002) (internal quotation marks omitted).  Thus, "the duty to liberally construe a [*pro se*] plaintiff's complaint [is not] the equivalent of a duty to re-write it."  *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).

25.     On a Rule 12(b)(6) motion to dismiss, courts may consider "facts stated on the face of the complaint, … documents appended to the complaint or incorporated in the complaint by reference, and … matters of which judicial notice may be taken."  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (internal quotation marks omitted).  "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents."  *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks omitted).

26.     Courts also may "take judicial notice of matters of public record, including filings in related lawsuits."  *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 351 F. Supp. 2d 79, 96 n.17 (S.D.N.Y. 2004) (citations omitted).  Bankruptcy courts may take judicial notice of prior decisions or filings in the same bankruptcy case.  *See, e.g.*, *In re AMR Corp.*, 567 B.R. 247, 250 & n.7 (Bankr. S.D.N.Y. 2017) (taking judicial notice of prior decisions in "several different adversary proceedings in th[e] bankruptcy" for purposes of considering a motion to dismiss an adversary complaint); *In re 477 W. 142nd St. Hous., Dev. Fund Corp.*, No. 15-12178, 2020 WL 3067733, at *7 (Bankr. S.D.N.Y. June 8, 2020) (similar).

27.     Federal Rule 9(b), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7009, requires plaintiffs to plead claims involving fraud or mistake "with particularity." Fed. R. Civ. P. 9(b).  A complaint alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *DiMuro v. Clinique Laboratories, LLC*, 572 Fed. App'x 27, 30 (2d Cir. 2014) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).  "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  Although malice, intent, or knowledge can be alleged generally, plaintiffs cannot "base claims of fraud on speculation and conclusory allegations," but rather must "allege facts that give rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).  Claims alleging fraudulent misrepresentation and fraudulent inducement are subject to Rule 9(b)'s heightened pleading standard.  *See, e.g.*, *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 179 (2d Cir. 2015) ("[T]he complaint fails to plead a fraudulent misrepresentation with the particularity required by Rule 9(b) …."); *Cyganowski v. Beechwood Re Ltd.*, 427 F. Supp. 3d 395, 441 (S.D.N.Y. 2019) ("A fraudulent inducement claim is also subject to the heightened pleading standard of Rule 9(b).").  *Pro se* plaintiffs are not exempt from Rule 9(b)'s heightened pleading standards.  *See Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 241 (S.D.N.Y. 2013) ("While the pleadings of a *pro se* plaintiff must be construed liberally, a *pro se* complaint must still meet the particularity requirements of Rule 9(b).").

## ARGUMENT

## I.    The Second Amended Complaint Does Not Provide Fair Notice of the Claims.

28.     At the outset, the Second Amended Complaint should be dismissed for failure to provide proper notice to the Debtors of the claims against them. Rule 8 of the Federal Rules of

Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7008, requires plaintiffs to file "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff's Second Amended Complaint— replete with inapplicable legal argument and factual allegations from another customer's adversary complaint that are unrelated to Plaintiff's case—fails to comply with this standard.

29.    Rule 8 is intended to provide defendants with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004). Courts applying Rule 8 will dismiss a complaint when it "is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *see also, e.g.*, *Kenlock v. Orange County*, No. 20-cv-3693, 2021 WL 4267309, at *2 (S.D.N.Y. Sept. 20, 2021) (dismissing a complaint that "fail[ed] to provide fair notice to [defendants] due to its convoluted structure, organization, syntax, and content"). Even for *pro se* litigants, dismissal is appropriate where a complaint fails to meet Rule 8's standards. *See, e.g.*, *Lafurno v. Walters*, No. 18-cv-1935, 2018 WL 2766144, at *3 (E.D.N.Y. June 8, 2018) (dismissing a *pro se* complaint as noncompliant with Rule 8 that was "rambling, at times incoherent, and disjointed").

30.    Here, Plaintiff's Second Amended Complaint fails to provide the Debtors with fair notice of the claims against them and the basis for those claims. The Second Amended Complaint—spanning 74 pages and including an additional 70 pages of exhibits—overlays long and meandering arguments regarding the purported ambiguity of the Debtors' Terms of Use with discussions of the automatic stay, statements from regulators, purported misrepresentative statements by Celsius employees, and intermittent factual allegations, some of which appear to be remnants of a different customer's prior complaint and inapplicable to Plaintiff's case. *See, e.g.*,

Second Amended Complaint at 23 (referencing oral argument at "my [Mr. Frishberg's] Lift Stay Motion hearing on September 1st, 2022"); *id.* at 38–39, 42 (referencing an attempted closure of his loan account on July 5, 2022, despite prior allegations that he attempted to close his loan on June 15, 2022). Plaintiff's confusing allegations—some of which plainly do not apply to Mr. Shanks' case—render the Second Amended Complaint difficult to parse. It is unreasonable and prejudicial to require the Debtors to wade through repetitive and unstructured arguments and allegations over seventy pages to determine what information is relevant to Plaintiff's seven claims, particularly when certain factual allegations do not even apply to Plaintiff's actual circumstances. *See Infanti v. Scharpf*, No. 06-cv-6552, 2008 WL 2397607, at *2 (E.D.N.Y. June 10, 2008) ("It is not the duty of … [D]efendants or this Court to sift through the Complaint and guess which factual allegations support which claims." (quoting *Discon Inc. v. NYNEX Corp.*, No. 90-cv-546A, 1992 WL 193683, at *16 (W.D.N.Y. June 23, 1992)). This Court should dismiss Plaintiff's Second Amended Complaint for failure to provide the Debtors with the requisite "short and plain statement" regarding his entitlement to relief on the claims asserted.

## II.    The Law of the Case Bars Plaintiff from Litigating His Claims in this Adversary Proceeding.

31.    Beyond the pleading deficiencies, Plaintiff's claims are barred by the Earn Order. That Order established the law of the case in these bankruptcy proceedings that: (a) assets in Earn Accounts were "presumptively property of the estate and not property of the Account Holders" and (b) related creditor claims, including "breach of contract, fraud or other theories of liability," would be resolved in the claims resolution process. Earn Order at 30, 45. This Court has already invoked the law of the case established in the Earn Order to deny three motions seeking to establish ownership of funds in Earn Accounts. *See* Kwok Denial at 4; Khanuja Denial at 4; Gallagher

Denial at 2.  As a matter of law and equity, it should do the same here and bar Plaintiff from litigating his claim through this adversary proceeding.

32.     The "law of the case" doctrine dictates that "when a court decides a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 7–8 (2d Cir. 1996); *see also In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991) ("Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation.").  "[T]he law-of-the-case doctrine [is] driven by considerations of fairness to the parties, judicial economy, and the societal interest in finality."  *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009).

33.     Courts apply the law-of-the-case doctrine "when the[] prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication."  *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001).  Under the doctrine, "a court should adhere to its earlier decisions in subsequent stages of litigation unless compelling reasons counsel otherwise."  *In re Motors Liquidation Co.*, 585 B.R. 708, 725 (Bankr. S.D.N.Y. 2018) (Glenn, J.).

34.     The fact that a particular order or decision is appealed does not preclude that decision from being law of the case.  *See In re Hypnotic Taxi LLC*, 543 B.R. 365, 372 (Bankr. E.D.N.Y. 2016) ("The pendency of an appeal, absent a stay, does not affect the status of a finding as law of the case"); *In re Klaas*, 548 B.R. 414, 422 (Bankr. W.D. Pa. 2016) (similar), *aff'd*, 555 B.R. 500 (W.D. Pa. 2016), *aff'd*, 858 F.3d 820 (3d Cir. 2017); *Todd v. Russell*, 1 F. Supp. 788, 790 (S.D.N.Y. 1932) (similar).

35.     Bankruptcy courts in the district have applied the law-of-the-case doctrine to dismiss adversary complaints that attempt to relitigate issues subject to prior rulings.  In *In re AMR*

*Corp.*, for instance, the court dismissed claims in an adversary complaint based on a previous decision in a related adversary proceeding involving the same parties. *See* 567 B.R. at 252–53. The court found that the instant claims were "simply a thinly veiled attempt to make an end run around the prior rulings [in the other adversary proceeding]," noting that its prior rulings limiting the scope of claims "reflected a concern about the duplication of claims and inefficiency in the litigation of these disputes." *Id.* at 255, 257. The court thus invoked law-of-the-case to avoid further duplicative proceedings regarding issues on which it had already ruled. *See id.* at 256.

36.     Similarly, in *In re 477 W. 142nd St. Hous., Dev. Fund Corp.*, the bankruptcy court dismissed claims in an adversary proceeding about issues and arguments "substantially similar" to those previously considered and rejected by the court. No. 15-12178, 2020 WL 3067733, at *11 (Bankr. S.D.N.Y. June 8, 2020). In the main bankruptcy case, the plaintiff filed a "rejection motion" objecting to the confirmation of the final bankruptcy plan, despite not previously appealing the bankruptcy court's confirmation order. *Id.* at *5. The bankruptcy court denied the rejection motion, and the plaintiff appealed to the district court and Second Circuit, both of which denied the motion. *Id.* at *5–*6. The plaintiff then filed an adversary complaint, "again bas[ing] her arguments on the same issues that were previously raised and litigated" thrice over. *Id.* at *11. Because the adversary proceeding formed "part of the same 'case'" as the prior rulings, and because the complaint was "substantially similar" to the rejection motion, the bankruptcy court applied the law-of-the-case doctrine to dismiss the plaintiff's adversary proceeding. *See id.* at *12.

37.     The Earn Order requires the dismissal of Plaintiff's claims here. ***First***, Plaintiff's first cause of action seeking declaratory judgment that his assets are not property of the Debtors' estates is squarely foreclosed by the Earn Order. That Order explicitly held "based on Celsius's unambiguous Terms of use, and subject to any reserved defenses, that when the cryptocurrency

14

assets … were deposited in Earn Accounts, the cryptocurrency assets became Ceslsius's property; and the cryptocurrency assets remaining in Earn Accounts on the Petition Date became property of the Debtors' bankruptcy estates." Earn Order at 4. Plaintiff's arguments regarding the ambiguity of the Terms of Use and his ownership over assets in his Earn Account therefore lack merit and must be dismissed pursuant to the law of the case. Moreover, to the extent Plaintiff asserts that a breach of the contract entitles him to reclaim ownership of his assets, this argument too is foreclosed by the Earn Order and other prior rulings. *See* Po Denial at 3–4 (holding that although Po's "colorable claim[s]" to breach of contract "would not affect the ownership of cryptocurrency deposited in Po's Earn Accounts").

38.    ***Second***, Plaintiff's remaining claims, which all relate to the assets in his Earn Account, must be asserted through the claims resolution process as dictated by the Earn Order. Earn Order at 30, 43 (holding that claims for "breach of contract, fraud or other theories of liability" for Earn Account creditors were "explicitly reserved" for the claims resolution process). Indeed, the Court has already applied the Earn Order to deny three motions seeking the same relief that Plaintiff seeks now, instructing those movants to present their claims through the claims process. *See* Kwok Denial at 4; Khanuja Denial at 4; Gallagher Denial at 2. Plaintiff's Second Amended Complaint warrants no different treatment.

39.    To be clear, the Debtors do not seek to prevent Plaintiff—or any other creditor—from litigating his claims. Given the need for uniformity and equity during the bankruptcy process, however, the Court ordered that such claims be reserved for the claims resolution process. During that process, Plaintiff and all other similarly situated creditors will have "every opportunity to have a full hearing on the merits of the[ir] arguments." Earn Order at 45. Before that time, however,

the law of the case precludes some subset of similarly situated individuals from seeking to jump

the line, litigate their claims, and recover 100% of their assets to the detriment of other creditors.

### III.   The Debtors Did Not Breach the Terms of Use When They Prevented Plaintiff from Utilizing the Swap Feature.

40.   Even setting aside the law of the case, Plaintiff fails to state a claim for breach of

the Terms of Use.  *See, e.g.*, *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 624

(S.D.N.Y. 2013) ("A sufficient pleading for breach of contract must, at a minimum, allege the

terms of the contract, each element of the alleged breach and the resultant damages in a plain and

simple fashion." (internal quotation marks omitted)).

41.   Terms of Use Version 8 is governed by New York law.  *See* Terms of Use Version

8 § 33.  Under New York law, "[t]he essential elements of a cause of action to recover damages

for breach of contract are (1) the existence of an enforceable contract, (2) the plaintiff's

performance pursuant to that contract, (3) the defendant's breach of the contract, and (4) damages

resulting from that breach."  *Nassau Operating Co. v. DeSimone*, 206 A.D.3d 920, 926 (N.Y. App.

Div. 2022).  A "breach" equates to "failure of [a] defendant to perform" in accordance with the

contract.  *Cisco Sys., Inc. v. Synamedia Ltd.*, 557 F. Supp. 3d 464, 472 n.5 (S.D.N.Y. 2021).

42.   "When a contract governed by New York law is unambiguous, the meaning of that

contract is a question of law that the Court may decide on a Rule 12(b) or Rule 12(c) motion."

*Surrey Propco LLC v. Denihan Ownership Co.*, 614 F. Supp. 3d 62, 69 (S.D.N.Y. 2022) (internal

quotation marks omitted).  A contract is "unambiguous" where "the agreement on its face is

reasonably susceptible of only one meaning."  *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569–

70 (2002).  "Whether the contract is unambiguous is a question of law for the court."  *Cont'l Ins.*

*Co. v. Atlantic Cas. Ins. Co.*, 603 F.3d 169, 180 (2d Cir. 2010) (internal quotation marks omitted).

43.     In determining the contractual rights of the parties, a court must begin with the agreement itself. *See Wedgewood Care Cntr., Inc. v. Kravitz*, 198 A.D.3d 124, 132 (N.Y. App. Div. 2021) ("Where the parties' agreement is before the court in a breach of contract action, its provisions establish the rights of the parties and prevail over conclusory allegations of the complaint." (internal quotation marks omitted)).

44.     On a Rule 12(b)(6) motion, a "breach of contract claim must be dismissed where the unambiguous terms of the contract do not support a plaintiff's claim." *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015). A court cannot "supply a specific obligation the parties themselves did not spell out" in the complaint. *Tonking v. Port Auth. of N.Y. & N.J.*, 3 N.Y.3d 486, 490 (2004); *see also Spinelli*, 96 F. Supp. 3d at 131. Rather, the complaint must "identify, in [a] non-conclusory fashion, the specific terms of the contract that a defendant has breached," or else it "must be dismissed." *Hudson Neurosurgery, PLLC v. UMR, Inc.*, No. 20-cv-9642, 2022 WL 902107, at *4 (S.D.N.Y. Mar. 28, 2022).

45.     The Second Amended Complaint fails to plead facts demonstrating any failure of the Debtors to perform under the contract. ***First***, Plaintiff fails to plead a breach of the Terms of Use based on the alleged refusal to Swap Plaintiff's Earn Account assets to pay off his outstanding loan. Plaintiff alleges that the Debtors violated the Terms of Use by refusing Plaintiff's "specific instructions to [Debtors] to utilize his 'Earn' account transfer/swap between account(s) to pay off the loan . . . ." Second Amended Complaint at 8. However, the Terms of Use, in multiple provisions, clearly and unambiguously grant the Debtors the right to restrict or terminate a customer's ability to access his account or use certain services, *in the Debtors' sole discretion*. For instance, Section 4.A states, in capitalized, bold lettering, in relevant part: "Celsius may restrict services in certain jurisdictions due to applicable laws, regulations, and business considerations,

*at its sole discretion*." Terms of Use Version 8 § 4.A (emphasis added).   Section 4.A further

provides:

> Celsius may freeze, suspend or terminate your Celsius Account at any time *in its sole discretion*, in addition to taking any action and seeking any remedy it may be entitled to in law or equity, including if Celsius suspects your involvement in any fraudulent activity of any kind or other misuse of the Services, provision by you of inaccurate or misleading information, or your involvement in any money laundering or other financial crime related to you or your Celsius Account.

*Id.* (emphasis added).

46.    The Debtors' right to freeze or suspend an account or services is also discussed in

Section 19.A: "[Celsius] ha[s] the right to suspend, freeze or close your Celsius Account at any

time *for any reason* without advance notice, including by blocking your access to the Celsius

Account or the Services." *Id.* at § 19.A (emphasis added).

47.    These Sections clearly and unambiguously grant the Debtors the unequivocal right

to restrict, suspend, or terminate access to customer accounts or services on the Celsius platform,

including the ability to access the Swap service.   *Id.*   Plaintiff therefore fails to state a claim for

breach with respect to allegations that he was refused access to the Debtors' Swap service.

48.    ***Second***, to the extent Plaintiff alleges that the Debtors breached the Terms of Use

by preventing Plaintiff from exercising his rights to an immediate call option under Section 11,

that right is not unilateral.   Section 11 is clear that any request to withdraw and close an Account

is subject to the Debtors' approval.   *See* Terms of Use § 11 ("Every transmission request shall be

deemed pending until accepted by us.   We may refuse to accept such request, or delay the

processing of an approved request for any reasonable reason….").   Moreover, Section 11 reserves

the Debtors' ability to "immediate[ly] halt" transactions due to, among other things, "extreme

market conditions."   *Id.*   Therefore, contrary to Plaintiff's assertions, he had no unilateral right

under the Terms of Use to withdraw his assets.

49.     Further, any such right was "[s]ubject to these Terms," including provisions in Sections 4.A and 19.A allowing the Debtors to unilaterally suspend, freeze, or terminate certain accounts or services. *Id.* at § 11.  Thus, any ability Plaintiff had to exercise his call option was also qualified by the Debtors' superseding ability to freeze all account activity. *See Fid. Nat'l Title Ins. Co. v. Assured Title Agency, Corp.*, No. 507343/2020, 2021 WL 143474, at *4 (N.Y. Sup. Ct. Jan. 15, 2021) ("It is clear that the use of the term 'subject to,' in every instance means that whatever the provision, law, etc., if it is 'subject to' something, that something takes priority.").

50.     Because Plaintiff has failed to plead any conduct constituting a breach of the Terms of Use, that claim must be dismissed.

## IV.    The Contractual Relationship Between Celsius and Plaintiff Precludes Plaintiff's Constructive Trust and Unjust Enrichment Claims.

51.     Even absent the Earn Order, Plaintiff's causes of action for establishment of a constructive trust and unjust enrichment must also be dismissed because the parties' relationship is governed by the Terms of Use, which formed "a valid, enforceable contract between the Debtors and [Plaintiff]."[4]  Earn Order at 30.

52.     New York law requires four elements to establish entitlement to a constructive trust remedy: (a) a confidential or fiduciary relationship; (b) a promise, express or implied; (c) a transfer

---

[4]     At several points in the Complaint, Plaintiff erroneously argues that because the Debtors allegedly breached the Terms of Use, the contractual relationship was terminated. *See, e.g.*, Second Amended Complaint at 9.  For the reasons stated above, the Debtors did not breach the Terms of Use. *See supra* Section III.  Moreover, Plaintiff incorrectly assumes that if a breach of a contract occurs, that equates to its termination. *Contra Waitkus v. Metro. Hous. Partners*, No. 114196/02, 2006 WL 6306863, at *1 (N.Y. Sup. Ct. Dec. 18, 2006) ("[A] breached contract … does not render it invalidated or unenforceable."), *aff'd*, 50 A.D.3d 260 (N.Y. App. Div. 2008); *Apex Pool Equip. Corp. v. Lee*, 419 F.2d 556, 562 (2d Cir. 1969) ("The right to terminate in the face of a breach is only an option to declare the contract at an end.").  To the extent any material breach did occur, which it did not, Plaintiff has not adequately pled rescission of the Terms of Use as required under New York law to establish termination of the agreement. *See Graham v. James*, 144 F.3d 229, 237–38 (2d Cir. 1998) (holding that "rescission d[oes] not occur automatically without some affirmative steps" and that "New York law does not presume the rescission or abandonment of a contract and the party asserting rescission or abandonment has the burden of proving it"); *Morgan Art Found. Ltd. v. McKenzie*, No. 18-Civ. 4438, 2019 WL 2725625, at *2 (S.D.N.Y. July 1, 2019) ("[B]reach of a contract does not automatically result in rescission.").

made in reliance on that promise; and (d) unjust enrichment. *In re First Cent. Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004). The unjust enrichment element "is the most important since 'the purpose of the constructive trust is prevention of unjust enrichment.'" *Id.* (quoting *Simonds v. Simonds*, 45 N.Y.2d 233, 242 (1978)).

53.     However, unjust enrichment claims, like other quasi-contract claims, are "not permitted when an express agreement exists that governs the dispute between the parties." *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 513 (S.D.N.Y. 2013); *Clark-Fitzpatrick, Inc. v. Long Island R.R.*, 70 N.Y.2d 382, 388 (1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."). "This doctrine clearly bars unjust enrichment claims when both parties to the lawsuit are also parties to the contract itself." *Am. Med. Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800, 2007 WL 683974, at *9 (S.D.N.Y. Mar. 5, 2007).

54.     As the Second Amended Complaint admits, the Terms of Use governs the relationship between Plaintiff and the Debtors, including the Swap feature and ownership of assets transferred to Plaintiff's Celsius Account. *See, e.g.*, Second Amended Complaint at 20. Plaintiff thus cannot state a claim for unjust enrichment or, by extension, constructive trust.

55.     Moreover, the other constructive trust elements are similarly lacking. The Terms of Use explicitly disclaims the establishment of any fiduciary relationship upon the use of any service, including the Borrow service. *See* Terms of Use § 10 ("These Terms and your use of any Services do not create a fiduciary relationship between us and you …."). Furthermore, Plaintiff fails to identify any promise made to him by the Debtors on which he relied in making a transfer of funds to his Account. To the extent Plaintiff alleges that he relied on statements regarding the

ownership of funds, those are representations explicitly governed by the Terms of Use.  Plaintiff

has therefore failed to plead any of the elements necessary to establish a constructive trust.

## V.   Plaintiff Fails to State a Claim for Deceptive Practices or Fraud.

56.    Finally, Plaintiff alleges three fraud-related causes of action: deceptive trade

practices, consumer fraud, and fraudulent misrepresentation.  Because Plaintiff fails to state a

claim for any of these causes of action, they must be dismissed.

### A.    Plaintiff Has Not Stated a Claim for Consumer Fraud or Deceptive Trade Practices.

57.    Plaintiff does not identify any statutory provision under which his consumer fraud

or deceptive trade practices causes of action are alleged.  The Debtors therefore assume, because

Plaintiff brings his claim in the Southern District of New York, he intended to assert claims under

New York's General Business Law Section 349, which prohibits deceptive acts and practices.[5]

58.    To state a claim under Section 349, a plaintiff must prove three elements: (1) "that

the challenged act or practice was consumer-oriented"; (2) "that it was misleading in a material

way"; and (3) "that the plaintiff suffered injury as a result of the deceptive act." *C=Holdings B.V.

v. Asiarim Corp.*, 992 F. Supp. 2d 223, 247 (S.D.N.Y. 2013).  "'Mere conclusory statements that

[statements] are misleading 'do not suffice'" to state a claim under Section 349. *Tomasino v. Estee

Lauder Cos.*, 44 F. Supp. 3d 251, 258 (E.D.N.Y. 2014).  Though plaintiffs need not plead

justifiable reliance or a defendant's intent to deceive, "a plaintiff must plausibly allege he or she

was exposed to the deceptive conduct in the first instance." *In re USAA Data Sec. Litig.*, No. 21

CV 5813, 2022 WL 3348527, at *10 (S.D.N.Y. Aug. 12, 2022); *see also Rand v. Travelers

Indemnity Co.*, No. 21 CV 10744, 2022 WL 15523722, at *10 (S.D.N.Y. Oct. 27, 2022) (same).

---

[5]    Because New York does not have an independent statute prohibiting "consumer fraud," the Debtors treat
Plaintiff's consumer fraud and deceptive trade practices claims as one claim arising under N.Y. Gen. Bus. Law §
349 (2023).

Moreover, the New York Court of Appeals has adopted an "objective definition of deceptive acts and practices, whether representations or omissions, limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). Because the test is objective, courts can determine "as a matter of law" that an allegedly deceptive statement "would not have misled a reasonable consumer." *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020).

59.    With respect to injury, "New York courts have rejected the notion that a defendant's deception alone—in other words, allegations of pecuniary loss arising solely from the purchase of the defendant's product—may suffice to plead 'actual injury' for a Section 349 claim." *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 676 (S.D.N.Y. 2012); *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999) (rejecting the argument that "consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business law § 349"). Plaintiffs must therefore plead "something more than the defendant's deception" to state a claim. *Preira*, 885 F. Supp. 2d at 677; *see Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629 (N.Y. App. Div. 2007) (requiring more than "deception as both act and injury," such as that "the price of the product was inflated as a result of defendant's deception or that use of the product adversely affected plaintiff's health" to state a claim under Section 349).

60.    Courts have recognized that "[t]here can be no claim for deceptive acts or practices, however, when the alleged deceptive practice was fully disclosed." *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 404 (S.D.N.Y. 2010) (quoting *Watts v. Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp. 2d 334, 346 (E.D.N.Y. 2008)); *Millennium Health, LLC v. EmblemHealth, Inc.*, 240 F. Supp. 3d 276, 286 (S.D.N.Y. 2017) (quoting *Chiste*). Thus, a plaintiff cannot base a claim for misrepresentation under Section 349 on matters explicitly disclosed in a written agreement. *See*

*Tardibuono-Quigley v. HSBC Mortg. Corp.*, No. 15-cv-6940(KMK), 2017 WL 1216925, at *15 (S.D.N.Y. Mar. 30, 2017) ("A GBL § 349 claim does not lie when the alleged deceptive practice … was a matter explicitly disclosed in and permitted under … [a] written agreement." (quoting *Asimov v. Trident Media Grp., LLC*, No. 654129/2013, 2014 WL 4109705, at *4 (N.Y. Sup. Ct. Aug. 15, 2014)).

61.     Here, Plaintiff alleges that the Debtors "misrepresented material facts concerning the transfer of the assets to Celsius, the ownership, and material facts about Celsius's business model, solvency, and effectively everything," including through statements made by former Celsius CEO, Alex Mashinsky.   Second Amended Complaint at 61–62.   Plaintiff identifies numerous allegedly false or misrepresentative statements made by Mr. Mashinsky and others regarding regulatory compliance, Celsius's business model and financial stability, and ownership of digital assets. *See id.* at 55–58.  Plaintiff further alleges that "[i]n reasonable reliance upon the Debtors' misrepresentations," he "entered a contractual arrangement in which he lent his assets to Celsius with the understanding it could be used as collateralized [sic] for loans." *Id.* at 58.

62.     *First*, Plaintiff fails to plead with any specificity how the alleged statements were in fact false or misleading, instead generally citing to the Examiner Report as support for the allegation that the Debtors or their employees made false or misleading statements.   Second Amended Complaint at 58.  Such cursory pleadings are insufficient state a claim under Section 349. *See Tomasino*, 44 F. Supp. 3d at 258.

63.     Moreover, with respect to alleged statements regarding the ownership of assets, Plaintiff cannot allege that those representations were deceptive because the Terms of Use clearly and unambiguously detailed the transfer ownership of assets to Celsius.  *See* Earn Order at 38–43. Any allegedly false or misrepresentative statements made by Celsius employees regarding

ownership or title of digital assets were belied by those clear, written Terms, and any reasonable consumer viewing those Terms would be on notice of their contents. Plaintiff therefore cannot "plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled," and cannot sustain a claim that the alleged misstatements were deceptive. *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021); *see Tardibuno-Quigley*, 2017 WL 1216925, at *15 ("[A] GLB § 349 claim does not lie when the alleged deceptive practice … was a matter explicitly disclosed in and permitted under … [a] written agreement.").

64.     ***Second***, even if Plaintiff has adequately pled false or misrepresentative statements, he does not specifically allege when he was exposed to such statements or how such misstatements factored into creating a Celsius account or initiating his loan. Plaintiff only states that he entered into the Terms of Use "[i]n reasonable reliance upon the Debtors' misrepresentations." Second Amended Complaint at 58. This conclusory statement is insufficient to state a claim under Section 349, as it fails to include the necessary details about which statements he relied on or whether he even encountered them before he registered for the platform. *See In re USAA Data Sec. Litig.*, 2022 WL 3348527, at *10 (holding with respect to a section 349 claim that "a plaintiff must plausibly allege he or she was exposed to the deceptive conduct in the first instance"). Plaintiff has therefore failed to substantiate his threadbare claims of reliance.

65.     ***Third***, Plaintiff's allegations of injury—amounting only to a claim that he entered into the Terms of Use because of the alleged misrepresentations—are insufficient as a matter of law. *See* Second Amended Complaint at 58[6]; *see Preira*, 885 F. Supp. 2d at 676 ("New York

---

[6]    Plaintiff's consumer fraud claim for relief also contains a conclusory and non-descript allegation that Plaintiff "suffered harm, including (but not limited to) monetary damages, legal fees and the costs of litigation." Second Amended Complaint at 63. Such generalized statements are not sufficient to show "actual injury," however.

courts have rejected the notion that a defendant's deception alone—in other words, allegations of pecuniary loss arising solely from the purchase of the defendant's product—may suffice to plead 'actual injury' for a Section 349 claim.").  Because Plaintiff has pled only "deception as both act and injury," he has not established adequate injury under Section 349.  *Baron*, 42 A.D.3d at 629.

B.    Plaintiff Has Not Stated a Claim for Fraudulent Misrepresentation.[7]

66.    In addition to his statutory misrepresentation claims, Plaintiff asserts a common-law claim for fraudulent misrepresentation.  "The elements of common-law fraud and intentional misrepresentation under New York law are the same."  *B&M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 480 (S.D.N.Y. 2010).    To state a claim for fraudulent misrepresentation, a plaintiff must prove: "(1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance." *Indep. Ord. of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998).  "It is beyond

---

[7]    Under New York's choice-of-law rules, New York substantive law applies where there is no conflict between the applicable laws of the relevant jurisdictions.  *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012) (per curiam) ("If no actual conflict exists, and if New York is among the relevant jurisdictions, the court may simply apply New York law.").  Here, Plaintiff is a domiciliary of Colorado, and Debtor Celsius Network Lending LLC, in addition to several other Debtor entities, is incorporated in Delaware and headquartered in New Jersey.  The Debtors' business also operated through New York, and many of the AMAs and other allegedly fraudulent misstatements occurred in New York.  Because there is no conflict between these jurisdictions with respect to fraudulent misrepresentation claims, New York law applies.  *Compare Bernardi v. Spyratos*, 79 A.D.3d 684, 687 (N.Y. App. Div. 2010) ("To recover damages for fraudulent misrepresentation, a plaintiff must prove (1) a misrepresentation or an omission of material fact which was false and known to be false by the defendant, (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it, (3) justifiable reliance of the plaintiff on the misrepresentation or material omission, and (4) injury.") *with Barnes v. State Farm Mutual Auto. Ins. Co.*, 497 P.3d 5, 11 (Colo. App. 2021) ("To establish a claim for fraudulent misrepresentation, a plaintiff must prove that (1) the defendant made a fraudulent misrepresentation of material fact; (2) the plaintiff relied on the misrepresentation; (3) the plaintiff had a right to rely on or was justified in relying on the misrepresentation; and (4) the plaintiff's reliance resulted in damages."); *Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 315–16 (D.N.J. 2012) ("To establish a claim for fraudulent misrepresentation or omission under New Jersey law, a plaintiff must meet five requirements: '(1) a material misrepresentation [or omission] of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" (quoting *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997))).

dispute that fraudulent misrepresentation claims sound in fraud and are subject to [Federal Rule of Civil Procedure] 9(b)'s heightened pleading standard." *Riker, Danzig, Scherer, Hyland & Perretti, LLP v. Premier Cap., LLC*, No. 15-cv-8293, 2016 WL 5334980, at *5 (S.D.N.Y. Sept. 22, 2016). To adequately plead a fraud or fraudulent misrepresentation claim, the plaintiff must "explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (internal quotation omitted).

67.     With respect to reliance, a plaintiff must demonstrate "actual reliance," meaning that he must assert that he "saw, read, or otherwise noticed" an alleged misrepresentation. *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 217 (S.D.N.Y. 2019) (quoting *Am. Fin. Int'l Grp.-Asia, LLC v. Bennett*, No. 05-cv-8988, 2007 WL 1732427, at *9 (S.D.N.Y. June 14, 2007)); *see also Ramiro Aviles v. S&P Glob., Inc.*, 380 F. Supp. 3d 221, 291 (S.D.N.Y. 2019) (holding that a complaint alleging fraud "must allege with particularity that [a plaintiff] actually relied upon the [defendant's] supposed misstatements"). Statements of reliance that are "conclusory and generalized" are not sufficient to plead actual reliance. *In re Fyre Festival Litig.*, 399 F. Supp. 3d at 216 (holding that statements such as "Plaintiffs and other Class members relied on Defendants' misrepresentations and omissions" were not sufficient to plead actual reliance).

68.     A plaintiff pleading fraudulent misrepresentation also must establish that his reliance on a statement was "justifiable under the circumstances." *SKR Res. Inc. v. Players Sports, Inc.*, 938 F. Supp. 235, 240 (S.D.N.Y. 1996). Under New York law, a plaintiff cannot establish justifiable reliance "when, by the exercise of ordinary intelligence [he] could have learned of the information [he] asserts was withheld." *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 199 (E.D.N.Y. 2018) (quoting *Transnational Mgmt. Sys. II, LLC v. Carcione*, No. 14-cv-2151, 2016

WL 7077040, at *8 (S.D.N.Y. Dec. 5, 2016)); *see also Crigger v. Fahnestock & Co.*, 443 F.3d
230, 234 (2d Cir. 2006) ("A plaintiff cannot close his eyes to an obvious fraud, and cannot
demonstrate reasonable reliance without making inquiry and investigation if he has the ability,
through ordinary intelligence, to ferret out the reliability or truth about an investment.").  "New
York courts have consistently held that it is not reasonable for a plaintiff to rely on oral
representations from defendant that contradict the express terms of the agreement."  *Fenton v.
Criterion Worldwide*, No. 18 Civ. 10224, 2020 WL 1489795, at *6 (S.D.N.Y. Mar. 27, 2020).

69.     Plaintiff's fraudulent misrepresentation claim falls for the same reasons as his
Section 349 claim.  ***First***, Plaintiff has not adequately pled that the alleged statements are false.
Plaintiff alleges that the Debtors made fraudulent misrepresentations with respect to a number of
topics, including: the transfer and ownership of digital assets on the Celsius platform; the Debtors'
financial health; the Debtors' "compliance with applicable laws and regulations"; the Debtors'
"ability to meet obligations"; the Debtors' "ability to safeguard customer assets"; and the Debtors'
"revenue sources."  Second Amended Complaint at 62.

70.     As noted above, absent from the Second Amended Complaint are facts explaining
how any of the purported misstatements were false or indicating that the purported speakers had
an intent to defraud.  Without such allegations, Plaintiff's fraudulent misrepresentation claim must
be dismissed for failure to satisfy Rule 9(b)'s particularity standard.  *See Caputo*, 267 F.3d at 191
(holding that to plead fraud, a plaintiff must "explain how the misrepresentations were fraudulent
and plead those events which give rise to a strong inference that the defendant had an intent to
defraud, knowledge of the falsity, or a reckless disregard for the truth"); *Lerner v. Fleet Bank,
N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) ("[I]n order to comply with Rule 9(b), 'the complaint must:
(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3)

state where and when the statements were made, and (4) explain why the statements were fraudulent.'" (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993))).

71.    ***Second***, Plaintiff has not adequately pled reliance.   The Second Amended Complaint does not, for instance, allege that Plaintiff listened to the AMAs or read Alex Mashinsky's Twitter messages that he cites elsewhere in his complaint.   Rather, Plaintiff offers only "conclusory and generalized" statements that he transferred assets onto the Celsius Platform "[i]n reasonable reliance on the Debtors' misrepresentations."   *In re Fyre Festival Litig.*, 399 F. Supp. 3d at 216; Second Amended Complaint at 58.   These boilerplate assertions do not to satisfy the general Rule 8(a) pleading standard, let alone the heightened standard under Rule 9(b).   *See Ramiro Aviles*, 380 F. Supp. 3d at 291 (holding that a complaint alleging fraud "must allege with particularity that [a plaintiff] actually relied upon the [defendant's] supposed misstatements").

72.    ***Third***, with respect to Plaintiff's allegations regarding ownership of digital assets, even if Plaintiff's allegations of actual reliance were sufficient—which they are not—Plaintiff's reliance on such statements was unreasonable.   As noted in the Earn Order, the Terms of Use clearly and unambiguously provide for the transfer of ownership of digital asset to Celsius.   Any reasonable consumer reading those Terms, regardless of oral statements or representations, would appreciate that they transferred ownership of the collateral to Celsius.   Plaintiff cannot use his own ignorance or failure to appreciate those clear Terms to establish justifiable reliance.   *See Daniel*, 287 F. Supp. 3d at 199 (holding that a plaintiff cannot establish a claim for fraud "when, by the exercise of ordinary intelligence it could have learned of the information it asserts was withheld"); *Fenton*, 2020 WL 1489795, at *6 ("New York courts have consistently held that it is not reasonable for a plaintiff to rely on oral representations from defendant that contradict the express terms of the agreement.").   Because any reliance by Plaintiff on alleged misstatements regarding the

treatment of collateral was not justifiable in light of the unambiguous Terms of Use, Plaintiff

cannot base a fraudulent misrepresentation claim on those statements.

## **CONCLUSION**

73.    For the foregoing reasons, the Court should dismiss the Second Amended

Complaint as to all Debtors.

*[remainder of page intentionally left blank]*

Washington, D.C.
Dated: June 23, 2023

*/s/ Grace C. Brier*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Judson Brown, P.C. (admitted *pro hac vice*)
T.J. McCarrick (admitted *pro hac vice*)
Grace C. Brier (admitted *pro hac vice*)
Leah Hamlin (admitted *pro hac vice*)
1301 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone:    (202) 389-5000
Facsimile:    (202) 389-5200
Email:        judson.brown@kirkland.com
              tj.mccarrick@kirkland.com
              grace.brier@kirkland.com
              leah.hamlin@kirkland.com

- and -

Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        patrick.nash@kirkland.com
              ross.kwasteniet@kirkland.com
              chris.koenig@kirkland.com
              dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| FRED M. SHANKS, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding No. 22-01190 (MG) |
| v. | ) | |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER GRANTING DEBTORS' MOTION TO DISMISS**
**THE SECOND AMENDED COMPLAINT**

Upon the motion (the "Motion")[2] of the above-caption debtors an debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") dismissing the Second Amended Complaint as more fully set forth in the Motion; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United states District court for the Southern District of New York*, dated February 1, 2012, and the Court having found this is a core proceeding pursuant to 28 U.S.C.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]    Capitalized terms used but not defined in this Order have the meanings given to such terms in the Motion.

§ 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefore, it is HEREBY ORDERED THAT:

1.    The Motion is granted as set forth herein.

2.    Plaintiff's Second Amended Complaint is dismissed in its entirety.

New York, New York
Dated: _____, 2023          _____
                                   MARTIN GLENN
                                   CHIEF UNITED STATES BANKRUPTCY JUDGE