Fred M. Shanks
389 Sedona Dr
Colorado Springs, CO 80921
Pro Se

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

FRED M SHANKS,

    Plaintiff,

vs.

CELSIUS NETWORK LLC, *ET AL.,1*

v.

CELSIUS NETWORK LLC;
CELSIUS KEYFI LLC;
CELSIUS LENDING LLC;
CELSIUS MINING LLC;
CELSIUS NETWORK INC.;)
CELSIUS NETWORK LIMITED;
CELSIUS NETWORKS LENDING LLC;
and CELSIUS US HOLDING LLC.

    Defendants

Chapter 11

Case No.: 22-10964 (MG)
  (Jointly Administered.)

ADV. PRO. NO. 22-01190_ (MG)

---

**NOTICE OF OBJECTION ON DEBTORS' MOTION TO DISMISS OF CLAIM NO. 22-01190 OF FRED M. SHANKS**

---

THE DEBTORS IN THESE CHAPTER 11 CASES, ALONG WITH THE LAST FOUR DIGITS OF EACH DEBTORS' FEDERAL TAX IDENTIFICATION NUMBER, ARE: CELSIUS NETWORK LLC (2148); CELSIUS KEYFI LLC (4414); CELSIUS LENDING LLC (8417); CELSIUS MINING LLC (1387); CELSIUS NETWORK INC. (1219); CELSIUS NETWORK LIMITED (8554); CELSIUS NETWORKS LENDING LLC (3390); CELSIUS US HOLDING LLC (7956); GK8 LTD. (1209); GK8 UK LIMITED (0893); AND GK8 USA LLC (9450). THE LOCATION OF DEBTOR CELSIUS NETWORK LLCS' PRINCIPAL PLACE OF BUSINESS AND THE DEBTORS' SERVICE ADDRESS IN THESE CHAPTER 11 CASES IS 5THE 0 HARRISON STREET, SUITE 209F, HOBOKEN, NEW JERSEY 07030.

**PRELIMINARY STATEMENT**

Plaintiff commenced this Adversary Proceeding by filing a detailed, well-plead Complaint, supported by multiple exhibits, explaining how *after the term* of using the Defendants' crypto asset-based platforms, the Defendants misappropriated the Plaintiffs' assets by selling them off by refusing to use established funds in the earn account. Significantly, the Complaint states that, ***under their own terms of use, the Parties' agreement(s) terminated by applying an extra-contractual requirement to the contract when they refused the plaintiff his rights to pay off the loan with the on platform crypto and limiting it to ONLY wire transfers of like cash or transferring coins from a third party platform,*** and had the defendants followed the terms of use agreement the collateral assets were to have been returned to the custody account and would not have been sold off.

In response, the Defendants have moved to dismiss this Adversary Proceeding, pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion to Dismiss"), claiming that the Complaint alleges a "contractual claim under the Terms of Use" and that this Court already has ruled that title to all assets under the Earn Account were the property of the Debtors in the Earn Account Opinion upon the petition date of the chapter 11 filing of July 13, 2022 however, the facts of this case all precedes the filing date by 30 days (June 13, 2022).  And does not address the issue of loan collateral being sold off by the defendants without the plaintiffs' permission.

It is black letter law that the factual allegations in the Complaint are to be taken as true for purposes of this Motion to Dismiss. *S*ee Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)[1]

The Complaint does not dispute the validity of the Earn Account Opinion or its binding impact based on the *"cryptocurrency assets remaining in the Earn Accounts on the Petition Date became property of the Debtors' bankruptcy estates (the "Estates").* Signed *January 4, 2023"* However, this does not address actions taken by the defendants prior to the petition date of *July 13, 2022,* which was when the Chapter 11 filing date occurred. Prior to that date the Plaintiff had all rights to utilize his assets to pay off the loan account as they were not a part of any Estate actions based on Chapter 11 filing at that time, as chapter 11 had not even been filed. Again, Pursuant to the Terms of Use, however, the Plaintiffs' assets in the earn account at the time were not a part of any estate actions as the defendant had not filed for Chapter 11 at that point of time and had the defendant followed the letter of the contract per Section 4 E: Borrow and paid off the loan with the available funds on the platform the collateral would have been placed in the custody account for which is not a part of the estate to date. Then, as detailed in the Complaint, the Defendants unilaterally – *without any contractual right or consent, and without any pretense of justification* – illegally took the Plaintiffs' assets and sold them off prematurely in the Loan account to cover the cost of the loan, additional Administrative Fees and interest.

In clear terms, with multiple exhibits, and in excess of multiple paragraphs, the Complaint detailed:

1. The Plaintiff had instructed that his assets to be used in his Earn Account to pay off the loan account prior to chapter 11 filing date

2. The Defendants acknowledged that the assets were available however, would not use them to pay off the loan even though the terms of use clearly allow for this, without limitations. The Plaintiffs' account was in good standing at the time and prior to Chapter 11 filing.
3. The Defendants improperly and prematurely liquidated the Plaintiffs' assets in the loan Account after freezing/Pausing all abilities to address margin calls and loan pay offs contrary to the Plaintiffs' express direction and without consent, express or implied
4. The Defendants were willing to utilize the Earn Account assets to cover the Margin Call and presumably the interest on the loan Account, but unwilling to use them to pay off the loan for which they would lose the collateral by it being placed in the custody account upon pay off, therefore negating the defense of we don't have enough funds to cover everything and supporting the unjust enrichment. By paying off the loan with already established funds on the platform and would have met the right of off sett requirement with in the contract.
5. ***All actions and lack of that were taken by the defendants were prior to Chapter 11 filing date.*** (bold and Italicized for emphasis)

That the plaintiff has clearly presented detailed facts that **negates** the 12(b)(6) motion to dismiss defense, as the plaintiff clearly met the burden of proof of the four pillars of the requirements

1. Defendant owed to plaintiff a duty of care by allowing the plaintiff to utilize all aspects of the contract avenues to close the loan prior to the filing of chapter 11
2. Defendant breached that duty of care by refusing to allow all aspect of the contract avenues to be utilized to resolve the loan
3. Plaintiff suffered injuries by having the collateral liquidated and an administrative fee charged for liquidating the collateral and then approximately 60 days later allowing other customers in the exact same situation to be exempted from the requirements of liquidation by willfully, materially and intentionally violating the contract by changing how they addressed loan requirements without applying the process equitably to all the customers.
4. These injuries were the result of defendants' breach of duty by refusing to comply with 100 percent of the verbiage of the contract and putting the plaintiff under duress of impossibility and/or economic duress

These points distinguish the present Adversary Proceeding from the precedents relied upon by the Defendants, paragraph after paragraph, about the "law of the case" and prior determinations which is based on the chapter 11 filing date. For which was not applicable as to the issue occurred prior to the chapter 11 filing date as discussed below, these other decisions are factually, and legally, distinguishable based on the date and occurrence of action taken after the chapter 11 filing date. For example, the Defendants refer to the cases involving Kwok Mei Po, Kulpreet Khanuja, and Rebecca Gallagher, where Plaintiffs claim intent to withdraw funds from their respective Earn Accounts all covered under Section 11 Withdrawals. The plaintiffs' actions Here, however all took place prior to the chapter 11 filing date and is covered under

Section 4 E: Borrow and there was no attempt by the Plaintiff to withdrawal to an external account. There was also, no second "click thru" or any other consent to disallowing the use of established assets on the platform for paying off the *loan Account* or any language referencing freezes/pauses under Section 4 E: Borrow pertaining to freezes/pauses "due to extreme market conditions" as is referenced in Section 11: Withdrawals, which pertains strictly to withdrawing to an external account.

[1]Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (noting that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to s'tate a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")

Whether or not the Defendants can offer any right or justification for their behavior, or explain their clear deviation from the Terms of Use, they do not meet their burden to dismiss this Adversary Proceeding as all actions took place prior to the Chapter 11 filing.

## FACTUAL BACKGROUND

The relevant facts are stated in detail in the Complaint and supported by the accompanying exhibits. Ex. 1, and incorporated herein.[2]

In brief, Plaintiff have at least the following common claims, stemming from (i) their exercise of call options pursuant to the appropriate Account Terms of Use, (ii) which Terms of Use provided that each had the right to exercise their call options "to demand ***immediate***, complete or partial repayment of any loan ***at any time***"[2], (iii) the Defendants acknowledgment of the Plaintiffs' exercise of his call options and cessation of Rewards for the Plaintiffs' assets, and (iv) Defendants *extra*-contractual actions in keeping or redepositing the assets into the Plaintiffs' respective Accounts which did not occur do to the assets being sold off because the defendants refusal to allow the use of established funds on their platform to be used to pay off the loan therefore ignoring Section: **9. Setoff and Security Interest Rights** and demanded extra funds be transferred into a frozen/paused account due to market volatility and no other illicit reasoning. This made little sense as the defendant had allowed a previous loan to be paid off with established funds on the defendants' platform in the past. The Plaintiff acted within his rights based on the Terms of Use, pursuant to contract, and without any permission whatsoever defendants sold off the plaintiffs' collateral prematurely. The defendants then took measures of freezing/pausing all other loans approximately 60 days later from Margin calls and Liquidation after filing for Chapter 11. The defendants however, did not readdress the premature actions of making the plaintiff whole based on the overzealous actions of selling off the Plaintiffs collateral prior to filing for Chapter 11 in July.

**New transfers made by non-accredited investors (for which I am) in the United States will be held in their new Custody accounts and will not earn rewards.** Non-accredited investors can continue to swap, borrow, and transfer within their Custody accounts based on their local jurisdiction.

All coins posted as collateral against a loan that is opened prior to April 15, 2022, will be returned to their Earn accounts when the loan is repaid (Plaintiffs loan was established on 05/22/2022). Those coins will resume earning rewards for as long as they remain in their Earn accounts. However, my loan was open after April 15 and all coins should have been returned to the custody account when the loan was paid off just as the defendant did with the remaining balance of coins once they sold off the collateral prematurely to filing for Chapter 11. By refusing to allow the plaintiff to utilize his current platform established coins the defendants circumvented having to return those coins to the custody account which is not a part of the estate.

Section E Borrow

You may apply to borrow certain Fiat currencies or Stablecoins from an Affiliate of Celsius, as will be agreed between you and Celsius or its Affiliates in writing, against Eligible Digital Assets in your Celsius Account (each, a **"Loan"**). If approved, such application shall be subject to a separate agreement to be entered into between you and the Celsius Affiliate (the **"Loan Agreement"**), and Celsius or its Affiliates shall hold the Digital Assets provided as collateral under the Loan Agreement for the benefit of the Lender subject to the terms hereof, including without limitation Sections 9, 10 and 13. At no point is there a reference to *extreme market conditions* (italicized added for emphases) and a critical fact that the defendants **were not** in chapter 11 at the time of occurrence.

Section 11 Withdrawals:

Relates specifically to the withdrawal of funds from the various accounts and sent to external accounts away from the defendants' platform. It does not apply to inner transfer of crypto between accounts on the plaintiffs' platform for which the defendants are constantly referencing. To state otherwise is a specious argument, relying on a misapplication of sections and content.

Celsius and our third-party partners may experience cyber-attacks, extreme market conditions, or other operational or technical difficulties which could result in the immediate halt of transactions either temporarily or permanently. Provided that Celsius has taken reasonable commercial and operational measures to prevent such events in technical systems controlled by Celsius, Celsius is not and will not be responsible or liable for any loss or damage of any sort incurred by you as a result of such cyber-attacks, operational or technical difficulties or suspensions of transactions. Withdrawal limits based on amounts and/or frequency may apply from time to time, based on legal, regulatory, AML and/or security considerations. Our policies and procedures may require additional security and/or compliance checks that require additional time to complete. Any individual request to exceed withdrawal limits set by Celsius must be sent via email to app@celsius.network.

If withdrawals and borrowing where of the same category would they not be under the same sections so relating terminology from the withdrawal to the borrow section is very ambiguous and a specious argument, again relying on a misapplication of sections and content.

Relating back to Section E Borrow: In no circumstances shall it be permissible for you to use the proceeds of such Loans to purchase additional Digital Assets through any third-party fiat "on-ramp" service providers that may be integrated in or connected with the Celsius platform from time to time, and you represent and warrant that you will not do so. Celsius further does not recommend or encourage any use of borrowed funds for purchasing Digital Assets or making any financial investment. You represent that any use by you of the proceeds of Loans shall be in full compliance with all applicable laws and regulations, these Terms, and the applicable Loan Agreement, and you shall be solely responsible and liable for any breach of any of the foregoing.

Any Eligible Digital Assets you provide as collateral under a Loan Agreement shall not be eligible for another Service provided by Celsius at the same time, including the Earn Service, as set out above, and by entering into any Loan Agreement you explicitly authorize Celsius to deduct the amount of Eligible Digital Assets corresponding to the collateral amount from the applicable Service in your Celsius Account.

Under these facts – being assumed as true, as they must – this Courts' Earn Account Opinion simply does not apply. Previous so-called "law of the case" determinations does not address these facts for loan accounts or actions taken prior to Chapter 11 filing, nor do the Defendants get to re-draft the Complaint to paint the facts within those addressed by the Earn Account Opinion. Neither the Earn Account Opinion, nor the other so-called "law of the case" decisions cited by the Defendants, addresses transfer of assets *back into custody Accounts in June 2022 after the "contract(s) "immediately" terminated previously, in June prior to the July chapter 11 filing.* As no discussion has been addressed in regards to loan accounts or actions taken prior to Chapter 11 filing in the earn account order, below, these specific details, are *not* discussed in the Earn Account Opinion, nor in previous decisions regarding the ownership of assets dictated by the Earn and Borrow Agreements.

The Terms of Use provided that depositors had the right to exercise their call options "to demand *immediate*, complete or partial repayment of any loan *at any time.*" The Plaintiff exercised his call options, and the Defendants acknowledged that action by email and willingness to utilize the assets from the Earn Accounts for the margin call but rejected his call option when it came to paying off the loan. This signaled termination of the Earn Account, Custody and Loan Agreements as between the Plaintiff and the Defendants, and there was no subsequent agreement to reinstate the Earn Account or custody account Agreements. Accordingly, the Motion to Dismiss must be denied

---

[2] See Complaint pp. 22-01190
[10] Terms of Use, § exhibit E

The Complaint clearly states that the plaintiff made multiple attempts to close the loan account and addresses the short fallings of how the defendants/Debtors choose to ignore their written and designed words of the contract in regards to the terms of use along with unjustly mandating and enriching the defendants by only allowing additional funds to be sent via wire transfer or third-party crypto account to pay off a loan, when a substantial amount of funds currently existed in the account. The plaintiff therefor afforded the Debtors fair notice of the claims against them and is validated through constant email correspondence with defendants' employees and the motion should not be dismissed as noncompliant with Rule 8 of the Federal Rules of Civil Procedure.

Right of setoff (also called "offset") allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding "the absurdity of making A pay B when B owes A." *Studley* v. *Boylston Nat. Bank,* 229 U. S. 523, 528 (1913). This should have been the **first course of action** taken and was attempted by the plaintiff when he attempted to pay off the loan with already established funds and presented to the defendant, via email. Which is unambiguously written in the contract by the defendant however, was clearly ignored during the exchange between the plaintiff and the defendant while the plaintiff was attempting to close the loan account, all prior to Chapter 11 filing. However, was dismissed by the defendants when the Plaintiff tried to apply this portion of the contract (Section: **9. Setoff and Security Interest Rights)** in regards to current balances held in his account on the defendants' platform.

The defendants' legal team is attempting to have this case dismissed on legal procedural issues, for which, as time has gone on, new facts have been provided to the court substantiating the issues of misconduct in contractual behaviors, mismanagement of crypto currency all after your honor had approved and signed the Earn Order. One has to ask themselves is this "law of case" truly applicable to every instance or does some exceptions to the law of case apply to various situation? Especially actions taken prior to Chapter 11 filing date.

The "Case of law" states that it is actionable upon the chapter 11 filing date it **does not state** it is actionable to any occurrences prior to the chapter 11 filing date, of *July 13, 2022*. For which the Plaintiff took actions to close the loan account 30 days prior to chapter 11 filing and attempted to resolve the payoff of the loan with established funds in the Earn Account on the defendants' platform and utilizing the requirements of Section 4 E: Borrow, all within his rights based on the Terms of Use. For which the defendants were willing to use only parts of Section 4 E: Borrow for other actions such as Margin Calls and presumably interest payments but refused to do so on the loan pay off.

The Defendants did not introduce any or new information regarding the specific procedures for the loan account pay offs in the contract in regards to utilizing Section: **9. Setoff and Security Interest Rights** based on established funds on the platform to pay off the loan accounts, or the specific transactions the defendants took for which the plaintiff takes at issue, here and has clearly disregarded their own written Terms of Use . To the contrary, they do not even attempt to address the very detailed allegations in the Complaint in *this* Adversary Proceeding and that these actions took place 30 days prior to filing of Chapter 11 (*e.g.*, that cryptocurrency was sold off without the plaintiffs' approval even though the plaintiff made multiple attempts to utilize established available funds on the platform "immediately" upon the defendants written contract and instruction pursuant to the Terms of Use upon for which they

rely on, when they sold off the plaintiffs' assets under the Section: **9. Setoff and Security Interest Rights**. The Defendants acknowledged in email that they applied a blanketed freeze/pause to all accounts (for which the defendant had an account in good standing at the time and is not disputed by the defendants) but were willing to make an exception to transfer on platform crypto funds to cover the margin call however, they would not apply the same exception when asked by the plaintiff to do so for paying off the loan. Defendants improperly leveraged the contract by selling off the crypto based on Section: **9. Setoff and Security Interest Rights** and applied an additional 3% administrative fee back to the plaintiff therefor avoiding having to place the collateral in the custody account for which would not be considered as part of the estate per the current understanding.

The defendant continues to fail to address the clearly stated main points of their actions of avoiding the Terms of Use of Section 4 E: Borrow in the contract when they took actions based on the Terms of Use for selling off the collateral applied to the loan prior to chapter 11 filing. Why was the defendant willing to only take action on one, the (Margin Call) but not the (Loan Pay Off) by willing to manually transfer the required amount of BTC on their end with approval by the plaintiff from the established earned account. This is supported by email evidence sent by employee Kira Airy (Celsius Network).

Based on email traffic the defendant created a situation of putting the plaintiff under duress of impossibility and/or economic duress to resolve the loan by demanding that the only course of action was to fund the Custody account, by transferring new coins in from an external address or a wire transfer, to pay off the loan, which is counter intuitive when you have over 100k plus already in place and being constantly informed that, and I quote "Currently, withdrawals, swaps, and transfers between accounts have been stopped." Then how can you take any course of action to resolve an issue and why would you even attempt to send more funds when you already have the funds in place? And the possibility of any funds that you attempted to transfer in from an external source is perceived in the plaintiffs' eyes as being at risk of being locked up in the custody account and not allowed to be transferred based on the defendants' constant canned response. The defendant clearly lost credibility and trust by the plaintiff based on their actions and constant avoidance of problem resolution prior to the Chapter 11 filing date.

All references to transferring any crypto from the earn account to the custody account with assistance from the defendants' employee Kira Airy (Celsius Network) was **ONLY** to full fill the Margin Call, which would NOT have closed out the loan but simply extending the loan leaving the plaintiff in the precarious situation of trying to figure out how to pay the interest monthly and paying off the loan. The plaintiff was clearly put into position of being under duress of impossibility and/or economic duress when trying to pay off the loan.

In not only the current Version 8 but all Versions of the contracts the Plaintiff has the option to close the loan at any time he/she chooses and is not dictated by one specific course of action on how the funds are put into place to cover the loan payoff but is afforded multiple avenues just as the plaintiff is afforded multiple types of coins according to the contract that can be used to pay off the loan. To deviate from the contract and then impose only external sources or wire transfers and negating the other contract avenues as a form of choice with no modification to the contract and **NOT** allowing the

Plaintiff the choice of accepting the new contract modification otherwise shows a course of action of a willfulness to materially and intentionally violate the contract and would be an extra-contractual agreement for which the Plaintiff did not agree to. This would appear to the average laymen as a breach of contract.

If the defendant was willing to transfer coins from the Earn Account (manually on their part) with the plaintiffs' approval into the Custody Account from the earn account to cover the Margin Call while all accounts are and I quote **"Celsius may freeze, suspend or terminate your Celsius Account at any time in its sole discretion" "Currently, withdrawals, swaps, and transfers between accounts have been stopped."** then why couldn't the defendant accomplish the same process with transferring from the earn account to the custody account and Swap the coins to meet the contract requirement by either reversing the **freeze, suspension or termination of the Celsius Account at any time for which they had sole discretion to do so as they do have the power to accomplish this**, when brought to defendants attention they refused to do so which would have allowed the plaintiff to acquire the required coins to pay off the loan OR allow the plaintiff to utilize the swap process to meet the loan payoff requirement, all allowable under Section 4 E: Borrow, again by simply unfreezing the account for a limited time? This was presented to the defendant by the plaintiff as remediation choice. As the defendant was willing to take action to manually transfer the number of coins from one account to another account to bolster the margin call but refused to do so with the loan is a clear case of selective contract usage of the contract verbiage or in legal terms a willfulness to materially and intentionally violates the contract, all prior chapter 11 filing again attempting to create an extra-contractual agreement between the two parties. All of this is validated in email between both parties.

And **if** the Plaintiff did utilize the Margin Call which would have extended the loan it **would not** address the issue of having to pay on the interest every month based on the fact that interest is paid for by transferring the required crypto currency from between accounts to the loan account, all frozen by the defendant which was based on their choice and prior to chapter 11 filing. The defendant clearly put the plaintiff in a catch 22 quagmire, based on and I quote "Currently, withdrawals, swaps, and transfers between accounts have been stopped." "**Celsius may freeze, suspend or terminate your Celsius Account at any time in its sole discretion**," for which they did, However, at the time the defendant was still imposing actions on the plaintiff to perform or face liquidation and prior to Chapter 11 filing date. This was the dilemma that the Plaintiff was faced with. With so much on the line the plaintiff was painted into a corner of being under duress of impossibility and economic duress trying to resolve this issue by utilizing the limited resources available to him which was in the current earn account with the sum of a value over 100k dollars to pay off the loan and would eliminate the stress of figuring out how to cover the interest every month while having to deal with the canned response of *"Currently, withdrawals, swaps, and transfers between accounts have been stopped."*. (Italicized added for emphasis)

The defendant was informed in writing that should Celsius liquidate any of the assets without rectifying their imposed upon freeze of accounts, will make them liable for all legal and financial costs to replace the funds liquidated by Celsius LLC loan department. And lack of acknowledgment will still be acceptance of understanding of all legal fees accrued to resolve this issue. The defendant opted to ignore this and can be proven via the email traffic. This interaction was clearly performed and ignored prior to the filing of the chapter 11 and a response was sent back via email chain by

Nicoletta Koursari (Celsius Network) Jun 14, 2022, 14:41 UTC which was considered acknowledgment of receipt of the email addressing the issue of liability on the defendants' part.

On Aug 16, 2022 the defendant realized the fact that they created a cause of action of putting creditors under duress of impossibility and/or economic duress and posted on their FAQs "At this time, margin calls and liquidations have been paused, including for loans that reach maturity or where the loan-to-value ratio (LTV) exceeds the loans' liquidation threshold." However, the damage to the plaintiff had already occurred by the defendant by liquidating his collateral and charging the plaintiff with administrative fees.

It is clearly in the Version 8 of the Terms of Use ("Terms of Use Version 8") as the defendant is continuously leveraging it to their advantage throughout these proceeding, the choice of the plaintiff as to when they chose to pay off the loan and where the funds come from, this is **NOT** the defendants' choice. To Not allow the plaintiff the right to exercise that aspect of the contract is willfully, materially and intentionally violating the contract as well as imposing an extra-contractual agreement, for which the Plaintiff did not agree to. The Terms of Use unambiguously states that Sections 9,10 and 13 apply to Section 4E: Borrow so, to ambiguously apply Section 11: Withdrawals to Section 4E: Borrow is an ambiguous and a specious argument, again relying on a misapplication of sections and content.

Section 4.A states, in capitalized, bold lettering, in relevant part: "Celsius may restrict services in certain jurisdictions due to applicable laws, regulations, and business considerations, at its sole discretion." Terms of Use Version 8 § 4.A, This DID/DOES NOT apply to the state of Colorado at the time as can be seen by all the purchases and loan origination details and based on Know Your Customer (KYC) that is part of the defendants' requirements and validation process. So, referencing this portion of the contract has no relevance, as this is just another cookie cutter approach to justify inappropriate actions on the defendants' behalf. This again shows contract enforcement when it benefits the defendant supporting willfulness and intentional behavior to protect the defendant even when they make a mistake.

The defendants' employee Kira Airy (Celsius Network) Jun 16, 2022, 12:03 UTC was confused as to the actions being requested by the plaintiff and I quote "My apologies, please decline the transfer" for which she was going to apply to the Margin Call, per her statement via email and acknowledged by the employee and was not intended to be used for the loan once she realized it and responded with the ONLY processes that the defendant was willing to allow for paying off the loan, would be accepting additional funds via wire transfer or transfer of additional coins via third party platform. When she was brought up to speed, she then recanted on all actions being requested in order to pay off the loan, as shown by email traffic and then utilized the canned phrase *"Currently, withdrawals, swaps, and transfers between accounts have been stopped."* (Italicized for emphasis)

Clearly based on the written email facts, when put into proper context, the defendant clearly materially, willfully and intentionally violated the contract between the two parties by refusing to leverage all parts of the contract and adding an extra-contractual requirement without the Plaintiffs' agreement by willing to receive in additional external funds therefore enriching the defendant by

adding additional funds to the account which would have only benefitted the defendant at the time of occurrence. All actions were addressed prior to the filing the chapter 11 case.

That all of these actions took place 30 days prior to the defendant even filing for chapter 11 restructuring and could have been avoided if the defendant had adhered to 100 percent of the written words in the contract and not tried to apply an extra-contractual requirement.

Plaintiff is willing to waive the issue of deceptive trade practices, consumer fraud, and fraudulent misrepresentation at this time with the understanding that it can be readdressed at a later date time if needed.

## LEGAL ARGUMENT

**Defendants Have Not Met their Burden.**

The Motion to dismiss is premised on Fed. R. Civ. P. 12(b)(6). The gravamen of the Motion to Dismiss is that: First, that Plaintiffs "want to escape the effects of the Earn Order" resulting in "inequity" and that the Plaintiffs must abide by the fact that their assets belong to the Debtor under the Terms of Use Agreement(s). Second, that the Complaint fails to "plead facts sufficient to support their various causes of action[.]" Neither of these positions is supported by the actual facts pled. The Defendants misconstrue the actual pleadings within the Complaint to paint the Plaintiffs with the same broad brush as other, past litigants. The circumstances actually detailed, however, are quite different, and all the legal elements have been met.

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must plead sufficient facts to state acclaim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding such a motion, a court must accept as true the facts alleged in the complaint, but it should not assume the truth of its legal conclusions. *Iqbal*, 556 U.S. at 678-79. A court must also draw all reasonable inferences in the plaintiffs' favor, and it may consider documents attached to the complaint, incorporated by reference into the complaint, or known to and relied on by the plaintiff in bringing the suit. *ATSI Commc'ns, Inc. v. Shaar Fund. Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). The Complaint contains sufficient factual matter and is plausible on its face. The Plaintiffs' allegations are not mere conclusory statements, but detailed descriptions of specific events, screen shots, emails, confirmations of "immediate" instructions and actions, documents and other evidence of the Defendants' extra contractual misconduct. Thus, the Complaint satisfies the standard set forth by Fed. R. Civ. P. 12(b)(6).

Taking the factual averments in the Complaint and its attachments as true as required by Rule 12(b)(6), the Plaintiffs case clearly does *not* sound in breach of contract, as Defendants infer. Indeed, as the Complaint clearly sets forth, the loan Account Agreements were terminated

by the Plaintiffs' exercise of his call options and the Defendants' subsequent refusal to utilize on platform funds and then liquidation of the collateral assets from the Plaintiffs' loan Accounts without his approval. Thus, the Defendants' actions were *extra*-contractual and firmly outside the Terms of Use – or any other consensual relationship. As discussed in the Complaint, and above, the Plaintiffs allege that the Defendants later returned the remaining assets into his custody Account *without mutual agreement.* There was no contract.

The "Law of the Case" Doctrine is Inapplicable.

Defendants argue that the "law of the case" doctrine applies, thereby precluding this Adversary Proceeding. This, however, is a specious argument, relying on a misapplication of the "law of the case" doctrine to an action that was taken prior to even filing for Chapter 11 bankruptcy.

The "law of the case" doctrine provides that once "a court decides upon a rule of law, that decision should continue to govern the *same issues* in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983) (emphasis added); *see also United States v. Plugh*, 648 F.3d 118, 123 (2d Cir. 2011) ("As a general matter, this Court will adhere to its own decision made at an earlier stage of the litigation.") (Internal quotation marks and citation omitted). "Law of the case and *res judicata* are closely related legal concepts both resting on policy considerations favoring putting an end to litigation, saving judicial time, and bringing certainty to legal relations." *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 148 (2d Cir. 1999) (*citing Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948)). "The doctrine of law of the case is similar to . . . res judicata in that it limits relitigation of an issue once it has been decided." *Id.* at 148.

Here, Plaintiff claims are substantially different from any issues addressed in prior "law of the case." Which are related to section 11 withdrawals for which the plaintiff was not attempting to withdrawal any funds to an external account but attempting to resolve a loan issue under Section 4 E: Borrow and preventing the sell off of his collateral. There was no prior determination where depositors exercised their call options under Section 4 E: Borrow, or had their collateral assets liquidated from the loan Account, without being able to pay off the loan with earn account funds being applied to the loan Account per Terms of Use, Section: **9. Setoff and Security Interest Rights** then, later, had their remaining assets redeposited into the custody Account after the liquidation with an *extra-contractually requirement applied*. The Defendants' unilateral decision to liquidate the collateral and return the unused assets to the custody Account, *after* the Terms of Use were no longer in effect, did not create a new contract and, moreover, has not previously been addressed. For which all occurred prior to the filing of chapter 11.

The Gallagher adversary proceeding, relied upon by Defendants, included no argument that the Defendants prematurely liquidated collateral assets to pay off their loan, administrative fees and interest with redepositing the remaining collateral to a Custody Account following termination of the loan per Account Agreement.

As noted in the Courts' Opinion:

> Gallagher makes several arguments in support of the Motion, including that (1) she relied on misleading public statements from Alex Mashinsky and others prior to opening her account; (2) Mashinkys' oral statements constituted oral modifications of the contract, since the Celsius Terms of Use did not include a clause preventing oral modifications of the contract; (3) Celsius promised to give fair notice of changes in the Terms of Use and did not do so; (4) because Celsius is not a bank and does not have a banking license, it does not have a claim to ownership of her assets.

Order Denying Rebecca Gallaghers' Motion, at 1. (Internal citations omitted).

Nor does the Courts' Opinion in the adversary proceeding brought by *Kulpreet Kahalnuja* address such a factual circumstance. In the Kahalnuja Adversary Proceeding, the Court addressed eight different theories as to why the Terms of Use did not apply or were unenforceable, including:

including that (1) Earn Assets belong to Account Holders because he paid taxes on the interest earned on his deposited assets (Motion, at 2); (2) Earn Assets were "loaned" to the Debtors by Account Holders, which indicates that title and ownership did not transfer to Celsius; (3) the use of "loan" throughout Celsiuss' terms of use creates an ambiguity that should be construed against Celsius and in favor of Account Holders; (4) the terms of use provide Account Holders the right to withdraw their digital assets at any time and obligate Celsius to return these assets, which indicates that ownership remained with Account Holders; (5) updates and modifications to Celsiuss' terms of use were obfuscated and any clauses that materially impacted asset ownership were not expressly or conspicuously disclosed by the Debtors; (6) Celsiuss' former Chief Executive Officer, Alexander Mashinsky, and other executives publicly stated in videos and on Twitter that Account Holders retained full ownership of their assets; (7) Celsiuss' terms of use constituted an unconscionable contract and is therefore unenforceable; and (8) Khanuja attempted to withdraw assets in April and May 2022 and was prevented from doing so, possibly intentionally, by Celsiuss' platform and employees.

Order denying Kulpreet Khanujas' Motion, pp 1-2 (Internal citations omitted).

Neither of these decisions of the Court addresses the Defendants' obligation under the Terms of Use to "immediately" Liquidate collateral to pay off a loan, recoup administrative fees, and interest and then place the remaining assets in a Custody Account Agreement "at any time", removal of assets from such loan Accounts, concurrent termination of Rewards accrual on the assets at issue consistent with termination pursuant to the Terms of Use, and then, re-introducing the remaining assets into the Custody Account is absent any contract between the parties.

So, too, with the Courts' decision in the adversary proceeding brought by *Kwok Mei Po*. In *Po*, the account holder claimed to have "full title to and ownership of the funds in her blocked or suspended Earn Accounts. Ms. Po argued that Celsius improperly blocked or suspended her accounts[.]" *Order Denying Kwok Mei Pos' Motion* at p. 1. The *Po* claims are patently different from those of the Plaintiff in this Adversary Proceeding, whereas the plaintiffs assets were acknowledged to be "immediately" liquidated for the paying off an established loan, administrative fees, and interest do to the fact that the defendant refused to use established funds in the Earn Account to be applied to the loan Account which would relinquish the established collateral, and should have been redeposited into custody account just as the remaining collateral had been placed in the custody Account Agreements were terminated. Ms. Po argued that "Celsius *failed to return* the cryptocurrency in the accounts to her before Celsius froze all account withdrawals." *Id.* at 2. (Emphasis added). The Court states in *dicta*, that it is unclear whether her account suspension is the functional equivalent of a termination. The Courts' decision in the Po Adversary Proceeding specifically carved out, and does not address, the issue here.

Po is further distinguishable. Ms. Po had too many accounts, and, therefore, many of the numerous accounts were suspended, again relying upon - rather than falling outside — the Terms of Use.

Here, the Plaintiff alleges that the Agreement already terminated based on the defendants' refusal to apply the appropriate funds to the loan account prior to chapter 11 filing.

There is no allegation that the plaintiffs' accounts were frozen for any of the contractual written documentation, unlike Ms. Po, here, and the defendants were more than willing to utilize the Earn account funds to pay for the Margin Call prior to chapter 11 filing.

For instance, Section 4.A states, in capitalized, bold lettering, in relevant part: "Celsius may restrict services in certain jurisdictions due to applicable laws, regulations, and business considerations, at its sole discretion." Terms of Use Version 8 § 4.A (emphasis added).

Section 4.A further provides:

Celsius may freeze, suspend or terminate your Celsius Account at any time in its sole discretion, in addition to taking any action and seeking any remedy it may be entitled to in law or equity, including *if Celsius suspects your involvement in any fraudulent activity of any kind or other misuse of the Services, provision by you of inaccurate or misleading information, or your involvement in any money laundering or other financial crime related to you or your Celsius Account*.
For which the Plaintiff did not fall into any of these categories. And the Defendant has not provided any written evidence to factually back up this claim. This is just another attempt to ambiguously apply a portion of the Terms of Use to avoid accountability of the defendants' actions.

Neither this Court, nor the Plaintiff, have had an opportunity to address the Defendants rogue, unilateral decision to prematurely sell off the loan Account(s) collateral. The Plaintiffs' "immediate" termination of the loan Account Agreements by the defendants' own written

terms and actions based on the premature liquidation of collateral assets therefrom prior to the chapter 11 filing ended any contractual agreement between both parties. The Motion to Dismiss does not address this in any way.

The Elements Are Properly Pled.

# RESERVATION OF RIGHTS

I reserve any and all rights, including but not limited to the right to amend this Adversary Proceeding. Nothing in this Adversary Proceedings is intended or should be construed as (a) an admission as to the validity of any claim against Mr. Shanks, (b) a waiver of Mr. Shanks's rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Adversary Proceeding, or any cited documents or any order granting the relief requested by this Adversary Proceeding, (e) a waiver or limitation of Mr. Shanks' rights under the Bankruptcy Code or any other applicable law, or (f) a concession by Mr. Shanks that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Adversary Proceeding are valid, and Mr. Shanks expressly reserves his rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

/s/ Fred M. Shanks
Date: 7/7/2023

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Exhibit A
Proposed order

|  |  |
|---|---|
| FRED M SHANKS,<br><br>        Plaintiff,<br><br>vs.<br><br>CELSIUS NETWORK LLC, *ET AL.,*1<br><br>v.<br><br>CELSIUS NETWORK LLC;<br>CELSIUS KEYFI LLC;<br>CELSIUS LENDING LLC;<br>CELSIUS MINING LLC;<br>CELSIUS NETWORK INC.;)<br>CELSIUS NETWORK LIMITED;<br>CELSIUS NETWORKS LENDING LLC;<br>and CELSIUS US HOLDING LLC.<br><br>        Defendants | Chapter 11<br><br>Case No.: 22-10964 (MG)<br>  (Jointly Administered.)<br><br>ADV. PRO. NO. 22-01190_ (MG) |

**ORDER OF OBJECTION ON DEBTORS'
MOTION TO DISMISS**

Upon the motion (the "Motion")[2] of the above-caption debtors an debtor(s) in possession (collectively, the "Debtors") for entry of an order (this "Order") dismissing the Motion to Dismiss as more fully set forth in the Motion; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District court for the Southern District of New York, dated February 1, 2012, and the Court having found this is a core proceeding pursuant to 28 U.S.C.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); and Celsius US Holding LLC (7956). The location of Debtor Celsius Network LLCs' principal place of business and the Debtors' service address in these chapter 11 cases is 121 River Street, PH05, Hoboken, New Jersey 07030.

[2] Capitalized terms used but not defined in this Order have the meanings given to such terms in the Motion.

§ 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested by the Plaintiff in the Motion to Dismiss the Objection to Dismiss is in the best interests of the Plaintiff; and the Court having found that the Plaintiff provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted to the Plaintiff herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing

therefore, it is HEREBY ORDERED THAT:

1. The Plaintiffs' Memorandum of opposition to Motion to Dismiss is granted as set forth herein.
2. Plaintiff is Awarded access to all Remaining Crypto in both Earn and Custody accounts and is be given access with 72 hours of signing this order
3. Administrative fee be returned in BTC to the Plaintiff
4. Value of the difference in the current Crypto Value of BTC to be returned to Custody account for with drawl vs what Plaintiff was charged on day of liquidation
5. Defendant to pay all Gas Fees to transfer out of Celsius Wallet
6. Cash Value of all Cel coins still remaining in account to be paid to the Plaintiff

New York, New York

Dated: _____, 2023                         THE HONORABLE MARTIN GLENN

                                                CHIEF UNITED STATES BANKRUPTCY JUDGE